113 Cal.Rptr.2d 878 (2001)
94 Cal.App.4th 14
STATE DEPARTMENT OF HEALTH SERVICES, Petitioner,
v.
The SUPERIOR COURT of Sacramento County, Respondent; Theresa
v.
McGinnis, Real Party in Interest.
No. C034163.
Court of Appeal, Third District.
November 29, 2001.
Review Granted February 13, 2002.
*879 Bill Lockyer, Attorney General, Davis S. Chaney, Senior Assistant Attorney General, James M. Schiavenza, Lead Supervising Deputy Attorney General, Jacob Appelsmith, Supervising Deputy Attorney General, Barbara A. Morris and Nina Thompson, Deputy Attorneys General, for Petitioner.
No appearance for Respondent.
Quackenbush & Quackenbush, William C. Quackenbush; Christopher H. Whelan, for Real Party in Interest.
Certified for Publication.[*]
HULL, J.
In two companion cases, Burlington Industries v. Ellerth (1998) 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (Burlington) and Faragher v. City of Boca Raton (1998) 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (Faragher), the United States Supreme Court outlined a defense available to an employer sued for sexual harassment under 42 U.S.C. § 2000e-2, subdivision (a) (hereafter Title VII). Specifically, if the offending conduct is committed by a supervisor, and if no tangible employment action is taken against the employee, the employer may defend against liability or damages by demonstrating that (1) the employer exercised reasonable care to prevent and promptly correct sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of the *880 corrective or preventive opportunities provided by the employer or otherwise failed to avoid harm. (Burlington, supra, 524 U.S. at pp. 764-765, 118 S.Ct. at pp. 2270-2271, 141 L.Ed.2d at p. 655; Faragher, supra, 524 U.S. at pp. 807-808, 118 S.Ct. at pp. 2292-2293, 141 L.Ed.2d at pp. 688-689.)
In this case, petitioner State Department of Health Services (DHS) seeks a determination that the Burlington/Faragher defense is equally available in cases brought under the California Fair Employment and Housing Act (FEHA). (Gov. Code, § 12900 et seq.; further undesignated statutory references are to the Government Code). Because FEHA is distinguishable from Title VII in several critical respects, we conclude this defense is inapplicable to state claims.

FACTS AND PROCEDURAL HISTORY
Theresa V. McGinnis worked at DHS under the supervision of Cary Hall. According to McGinnis's complaint, Hall sexually harassed her over an extended period of time, beginning in mid-1995. Hall's conduct ranged from inappropriate comments to physically touching McGinnis.
McGinnis confided in a coworker, but did not report Hall's behavior to management until November 1997. When she brought the matter to the attention of Hall's second-line supervisor, the supervisor reported the allegations to the DHS, Office of Civil Rights. That office investigated the matter, and concluded Hall had violated the DHS policy against sexual harassment. Disciplinary action was commenced against Hall, and he ultimately retired.
McGinnis filed a complaint against Hall and DHS that alleged causes of action for sexual harassment and sex discrimination.
DHS moved for summary judgment or summary adjudication, arguing in part that the Burlington/Faragher defense applied. DHS had developed and circulated an employee manual describing its policy against sexual harassment and its complaint procedure. DHS noted it had also provided sexual harassment training programs for its employees, which McGinnis attended. Invoking the Burlington/Faragher defense, DHS argued that, since (1) no adverse action had been taken against McGinnis, (2) it had developed a comprehensive policy and program to prevent and combat sexual harassment, and (3) McGinnis had not availed herself of those measures in a timely manner, it should not be held vicariously liable for Hall's harassing conduct.
McGinnis responded that the Burlington/Faragher defense available in Title VII cases should not be judicially grafted onto cases brought under FEHA. She asserted this conclusion was mandated by the significant differences between the two statutory schemes.
The trial court denied DHS's motion for summary judgment, and denied summary adjudication on the causes of action for sexual harassment and sex discrimination. Noting these two claims appeared to be duplicative, the court ruled: "[DHS] here seeks to assert an `affirmative defense' articulated for application in Title VII actions by the U.S. Supreme Court in Faragher and Burlington. The parties agree that no California appellate decision has considered the principle under California law. The Supreme Court's reasoning in the respondeat superior setting of Title VII is persuasive. At least in the absence of appellate authority, the application of that same reasoning to a FEHA harassment claim, grounded in strict liability against the employer, is a policy decision best left for the legislature. Therefore, *881 the Court will not apply Faragher and Burlington to this case."
DHS filed a petition for writ of mandate, prohibition, or other appropriate relief, essentially seeking a declaration that the Burlington/Faragher defense in fact applies to FEHA cases. DHS asserts the trial court should be ordered to apply the elements of this defense and reconsider its denial of the summary judgment motion. Even if summary judgment is again denied, DHS asserts, the applicability of the defense will be relevant in devising jury instructions.
We issued an alternative writ of mandate to determine whether the Burlington/Faragher defense applies to actions brought under FEHA. We consider that now.

DISCUSSION
Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." (42 U.S.C. § 2000e-2, subd. (a)(1).)
Sexual harassment is not expressly mentioned in the statute. However, the Guidelines of the Equal Employment Opportunity Commission (EEOC) and federal case law recognize sexual harassment as a type of sex discrimination and a violation of Title VII. (29 C.F.R. § 1604.11 (2000); Meritor Savings Bank v. Vinson (1986) 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59). Sexual harassment may take one of two forms. In quid pro quo harassment cases, an employer demands sexual favors from an employee in exchange for a job benefit. In hostile work environment cases, severe or pervasive harassment so alters the terms or conditions of employment as to be actionable. (Hicks v. Gates Rubber Co. (10th Cir.1987) 833 F.2d 1406, 1413.)
In Burlington, supra, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 a hostile work environment case, the Supreme Court analyzed the circumstances under which an employer might be held vicariously liable for a supervisor's harassing conduct. The court noted that, under Title VII, the term employer is defined as including agents, and Congress had directed courts to interpret Title VII in accordance with agency principles. (524 U.S. at p. 754, 118 S.Ct. at p. 2265, 141 L.Ed.2d at p. 648.) The Supreme Court reviewed those principles, and noted that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." (Id. at. p. 757, 118 S.Ct. at p. 2266, 141 L.Ed.2d at p. 650.)
However, the court continued, under the Restatement Second of Agency, section 219(2), scope of employment is not the only test for imposing vicarious liability. (Burlington, supra, 524 U.S. at p. 758, 118 S.Ct. at p. 2267, 141 L.Ed.2d at p. 650.) For example, liability may be imposed when an agent is the alter ego of the employer, or when the conduct violates a nondelegable duty of the employer, but the court found neither of these situations applicable in Burlington. (Id. at. p. 758, 118 S.Ct. at p. 2267, 141 L.Ed.2d at p. 651.) The court instead focused its attention on another basis for liability, that is, those instances when a servant is aided in accomplishing the tort by the existence of the agency relation. (Id. at pp. 758-760, 118 S.Ct. at pp. 2267-2268, 141 L.Ed.2d at pp. 651-652.)
The court held that, when a supervisor makes a tangible employment decision, i.e., one that "constitutes a significant change *882 in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (Burlington, supra, 524 U.S. at p. 761, 118 S.Ct. at p. 2268, 141 L.Ed.2d at pp. 652-653), the imposition of vicarious liability may be appropriate (id. at pp. 762-763, 118 S.Ct. at pp. 2269-2270, 141 L.Ed.2d at p. 653). "Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control." (Id at p. 762, 118 S.Ct. at p. 2269, 141 L.Ed.2d at p. 653.) Thus, "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." (524 U.S. at p. 762, 118 S.Ct. at p. 2269, 141 L.Ed.2d at p. 653.)
However, when no tangible employment action is taken, the situation is less clear. The Supreme Court noted: "Title VII is designed to encourage the creation of anti-harassment policies and effective grievance mechanisms. Were employer liability to depend in part on an employer's effort to create such procedures, it would effect Congress' intention to promote conciliation rather than litigation in the Title VII context [citation], and the . .. policy of encouraging the development of grievance procedures. [Citations.] To the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive, it would also serve Title VII's deterrent purpose." (Burlington, supra, 524 U.S. at p. 764, 118 S.Ct. at p. 2270, 141 L.Ed.2d at p. 654.)
The court concluded: "In order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding in this case and in Faragher .... [¶] An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, [citation]. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." (Burlington, supra, 524 U.S. at pp. 764-765, 118 S.Ct. at p. 2270-2271, 141 L.Ed.2d at p. 655; see also Faragher, supra, 524 U.S. *883 at pp. 807-808, 118 S.Ct. at pp. 2292-2293, 141 L.Ed.2d at pp. 688-689.)
The question before us is whether this defense is limited to actions brought under Title VII, or whether it may also be raised in claims brought under FEHA. DHS emphasizes that California courts often look to federal decisions in interpreting analogous provisions of FEHA, and it urges us to follow that practice here.
"Although the wording of [FEHA] and [T]itle VII of the Federal Civil Rights Act of 1964 [citation] differs in some particulars, the antidiscriminatory objectives and the overriding public policy purposes are identical and we refer to those federal decisions where appropriate." (County of Alameda v. Fair Employment & Housing Com. (1984) 153 Cal.App.3d 499, 504, 200 Cal.Rptr. 381, italics added.) In other words, to the extent the two statutory schemes are analogous, reference to federal case law is proper; where state law differs, however, federal interpretations of Title VII are not relevant. (See Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 498-499, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Page v. Superior Court (1995) 31 Cal.App.4th 1206, 1215-1216, 37 Cal.Rptr.2d 529; Johnson Controls, Inc. v. Fair Employment & Housing Com. (1990) 218 Cal.App.3d 517, 539-540, 267 Cal.Rptr. 158; Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 606, 262 Cal.Rptr. 842.)
We therefore turn first to a review of pertinent FEHA provisions.
Section 12920 declares it to be the public policy of the state to protect the rights of all persons to seek and hold employment without discrimination on account of sex or other protected classifications. The Legislature recognized that discrimination foments strife, deprives the state of the fullest utilization of its capacities, and adversely affects the interest of employees, employers and the public. (Ibid.) FEHA was intended "to provide effective remedies" to eliminate these discriminatory practices (ibid.), and it is to be liberally construed to effectuate its purposes. (§ 12993, subd. (a).)
Unlike Title VII, FEHA explicitly mentions harassment as an unlawful employment practice. In what is now section 12940, subdivision (j), FEHA prohibits an employer from harassing an employee because of sex, and the statute expressly states that "harassment because of sex" includes sexual harassment. (§ 12940, subd. (j)(4)(Q). The reach of this provision is broad: Unlike other FEHA provisions, which define "employer" as a person regularly employing five or more people, the antiharassment provisions apply to an employer of one or more. (Compare § 12940, subd. (j)(4)(A) with § 12926, subd. (d).)
Other provisions further emphasize the Legislature's clear intent to eliminate harassment in the workplace. In its 1984 amendments to FEHA, the Legislature declared: "It is the existing policy of the State of California ... that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors and clientele." (Stats.1984, ch. 1754, § 1, pp. 6403-6404.)
Section 12940, subdivision (j)(l) furthers this intent by providing in relevant part: "Harassment of an employee ... by an employee other than an agent or supervisor *884 shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment."
These principles are also reflected in the Guidelines of the Fair Employment and Housing Commission (FEHC) (further references to Guidelines are to title 2 of the California Code of Regulations), the administrative agency responsible for the administration of FEHA. Those Guidelines provide that "[s]exual harassment is unlawful ... and includes verbal, physical, and visual harassment, as well as unwanted sexual advances." (Guidelines, § 7291.1, subd. (f)(1); see also Guidelines, § 7287.6, subd. (b).)
A review of FEHA demonstrates another distinction between state and federal law, a distinction that is critical to the case before us. While Title VII does not explicitly address the question of employer liability for supervisor harassment, FEHA does. As noted previously, section 12940, subdivision (j)(1) provides in relevant part: "Harassment of an employee ... by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Italics added.) Thus, harassment by a nonsupervisory coworker is unlawful only if the employer knew, or should have known, of the harassment and failed to correct it. No such limitation exists for harassment by a supervisor or agent.
Under rules of statutory construction, expressio unius est exclusio alteriusthe expression of one thing is the exclusion of another. (In re Michael G. (1988) 44 Cal.3d 283, 291, 243 Cal.Rptr. 224, 747 P.2d 1152; People v. Rowland (1999) 75 Cal.App.4th 61, 66, 88 Cal. Rptr.2d 900; see generally 2A Singer, Statutes and Statutory Construction (6th ed.2000, § 47:23.))
The quoted language from section 12940, subdivision (j)(1) clearly indicates that, while an employer's knowledge and action may be relevant in assessing employer liability for harassment by a nonsupervisory employee, these factors are irrelevant when determining employer liability for harassment by a supervisor. Courts, administrative agencies, and commentators have consistently interpreted section 12940, subdivision (j)(1) in this manner.
"By providing harassment of an employee by an employee other than an agent or supervisor shall be unlawful only if the employer knows or should have known of the harassment and fails to intervene, section 12940 reflects that harassment by a supervisor is unlawful regardless of whether the employer knows or should have known and fails to intervene." (Kelly-Zurian v. Wohl Shoe Co. (1994) 22 Cal. App.4th 397, 415, 27 Cal.Rptr.2d 457, original italics.)
Similarly, in Doe v. Capital Cities (1996) 50 Cal.App.4th 1038, 58 Cal.Rptr.2d 122, the court commented that "characterizing the employment status of the harasser is very significant." (Id. at p. 1046, 58 Cal. Rptr.2d 122.) "[A]n employer's liability under [FEHA] for an act of sexual harassment committed by a supervisor or agent is broader than the liability created by the common law principle of respondeat superior. .. ." (Id. at p. 1048, 58 Cal.Rptr.2d 122, original italics.) Section 12940 "has been interpreted to mean that the employer is strictly liable for the harassing actions of its supervisors and agents [citations], but that the employer is only liable *885 for harassment by a coworker if the employer knew or should have known of the conduct and failed to take immediate corrective action." (Id. at p. 1046, 58 Cal. Rptr.2d 122.)
The court in Murillo v. Rite Stuff Foods, Inc. (1998) 65 Cal.App.4th 833, 77 Cal. Rptr.2d 12 stated: "The FEHA offers greater protection and relief to employees than does [T]itle VII. An employer is strictly liable for damages an employee incurs as a result of a supervisor's or agent's sexual harassment." (Id. at p. 842, 77 Cal.Rptr.2d 12.)
The Supreme Court recently made a similar observation in Carrisales v. Department of Corrections (1999) 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083, albeit in dicta, when it noted section 12940 "makes the employer strictly liable for harassment by an agent or supervisor, but liable for harassment by others only if the employer fails to take immediate and appropriate corrective action when reasonably made aware of the conduct." (Carrisales v. Department of Corrections, supra, at pp. 1136-1137, 90 Cal.Rptr.2d 804, 988 P.2d 1083.)
Other state and federal cases have also noted that the language of section 12940 imposes what has come to be referred to as strict liability in this context on employers for harassment by a supervisor, that is liability imposed on an employer, even though the employer did not know, and did not have reason to know, of the supervisor's conduct (e.g., Weeks v. Baker & McKenzie (1998) 63 Cal.App.4th 1128, 1146, 74 Cal.Rptr.2d 510; Fiol v. Doellstedt (1996) 50 Cal.App.4th 1318, 1327, 1328, 58 Cal.Rptr.2d 308; Pereira v. Schlage Electronics (N.D.Cal.1995) 902 F.Supp. 1095, 1102).
FEHC guidelines reflect the same principles. Guidelines, section 7287.6, subdivision (b)(2) provides: "Harassment of an ... employee by an employer or other covered entity, its agents or supervisors is unlawful." Subdivision (3) continues: "Harassment of an ... employee by an employee other than those listed in subsection (b)(2) above is unlawful if the employer or other covered entity, its agents or supervisors knows of such conduct and fails to take immediate and appropriate corrective action." (Italics added.)
We recognize that DHS questions the continuing viability of several FEHC cases that found employers strictly liable for the harassment of supervisors. FEHC cases are irrelevant to our analysis because it is not FEHC cases, but FEHA and appellate case law construing that act that imposes liability on an employer for a supervisor's harassing conduct.
We note also that commentators reviewing FEHA have instructed: "An employer is strictly liable under [FEHA] for its agent's or supervisor's acts of sexual harassment against an employee or applicant .... (by stating that harassment by employee `other than an agent or supervisor' is unlawful only if employer knows or should have known of harassment and failed to correct it, FEHA makes it clear that employer is strictly liable for harassment by supervisor).... Strict liability applies regardless of the type of sexual harassment, i.e., whether it is quid pro quo or hostile environment harassment. [¶] The employer's strict liability arises from FEHA regardless of the employer's own lack of knowledge or its attempts to remedy the situation, e.g., by publishing a policy against sexual harassment." (1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.1997), Sexual Harassment, § 3.21, pp. 110-111; see also Lindemann & Kadue, Sexual Harassment in Employment Law (1992) Fair Employment Practices Statutes, pp. 324-325, and 1997 supp., pp. 112-114.)
*886 This interpretation is consistent with legislative intent. (See People v. Rowland, supra, 75 Cal.App.4th at p. 66, 88 Cal. Rptr.2d 900.) Legislative materials relating to recent amendments to FEHA continue to reflect the Legislature's intent to make both employers and employees liable for harassment. For example, after the Supreme Court held in Carrisales v. Department of Corrections, supra, 21 Cal.4th 1132, 90 Cal.Rptr.2d 804, 988 P.2d 1083, that a nonsupervisory harassing employee could not be held personally liable for his or her conduct under FEHA, the Legislature added section 12940, subdivision (j)(3) to clarify that "[a]n employee ... is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (Stats.2000, ch. 1049, § 7.5.)
Though the Legislature added individual liability for employees to section 12940, it did not eliminate or alter liability for employers. Committee reports uniformly indicate this legislation was prompted by the belief that "employer liability alone is not a sufficient deterrent to harassment in the workplace," and that "the individual doing the harassing should be one of the parties held liable for the conduct." (Sen. Rules Com., Off. of Sen. Floor Analysis, 3d reading analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, par. 5; Sen. Jud. Com, Analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, par. 1; Assem.3d Reading Analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000.) The analysis quoted the bill's author as saying: "It seems only logical, and indeed fair, that this law should impose liability on those persons directly responsible for harassment as well as on employers." (Sen. Jud. Com., Analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, par. 4, italics added.) Opponents argued that employer liability alone was a sufficient deterrent. (Sen. Rules Com., Off. of Sen. Floor Analysis, 3d reading analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, par. 5; Sen. Jud. Com, Analysis of Assem. Bill No. 1856 (1999-2000 Reg. Sess.) as amended Apr. 4, 2000, par. 3.)
California law exhibits a clear intent to hold employers strictly liable for the harassing conduct of supervisory employees, even though the employer did not know, and did not have reason to know, of the supervisor's conduct, and essentially makes the obligation to provide a harassment-free workplace the nondelegable obligation of the employer. The jurisprudence relating to employer liability for harassment by a supervisor under FEHA has developed differently from that under Title VII. Permitting the Burlington/Faragher defense to be applied to FEHA cases would undermine the clear language of section 12940, subdivision (j)(1) and legislative intent.
DHS raises other arguments, which cannot withstand careful analysis. In an effort to open the door to the Burlington/Faragher defense, DHS questions the use of the term "strict liability" in this setting, asserting this phrase is generally restricted to products liability cases involving ultrahazardous activities. Regardless of the manner in which the term "strict liability" is used in other substantive areas of the law, it has come to be used in the area of employment law to connote liability imposed on an employer, even where the employer did not know, and did not have reason to know, of a supervisor's conduct. Properly understood, the term means nothing less and nothing more. While its use here may not square with the meaning *887 of the terms as it is used in products liability law, DHS's apparent argument that the door somehow is opened to the Burlington/'Faragher defense simply because the term "strict liability" is not a perfect fit between or among this and other areas of the law cannot be sustained.
In a similar vein, DHS cites Fisher v. San Pedro Peninsula Hospital, supra, 214 Cal.App.3d at pages 608-609, footnote 6, 262 Cal.Rptr. 842, and asserts that, despite the "strict liability" label, defenses are in fact available to an employer. DHS suggest then that, where defenses are available, there can be no strict liability. Again, however, that argument overlooks the manner in which the term has been used in employment law. Further, the question in Fisher was whether the harasser was an employee or independent contractor. Although the court stated that whether the harasser "is an independent contractor is an affirmative defense which must be asserted and proved by [the employer] at the time of trial" (ibid.), it is not a defense in the sense of the Burlington/Faragher defense. The issue raised in Fisher was whether the elements of a harassment claim could be met, namely, was the harasser an employee and, therefore, within the ambit of FEHA, or was he an independent contractor and outside its purview. Burlington/Faragher, on the other hand, assumes that the predicate elements of a claim are met, but permits a defense to exempt an employer from liability anyway.
It is well established that "in the construction of a statute the judiciary must simply ascertain and declare what is in terms and in substance contained therein, and may not insert thoughts that have been omitted or omit thoughts that have been inserted. [Citation.] A court may not rewrite the statute [citation], nor insert words in a statute under the guise of interpretation [citation], nor enlarge the plain provisions of a law [citations]." (Richardson v. City of San Diego (1961) 193 Cal.App.2d 648, 650, 14 Cal.Rptr. 494; accord, Edgar O. v. Superior Court (2000) 84 Cal.App.4th 13, 18, 100 Cal.Rptr.2d 540; Berhanu v. Metzger (1992) 12 Cal.App.4th 445, 448, 15 Cal.Rptr.2d 191; Johnston v. Department of Personnel Administration (1987) 191 Cal.App.3d 1218, 1223, 236 Cal. Rptr. 853.)
Here, because FEHA differs from Title VII in its treatment of employer liability for harassment by supervisors, and because courts and the Legislature have reaffirmed that California law holds employers "strictly liable" for such harassment, we find it inappropriate to rely on federal decisions and import the Burlington/Faragher defense into state law. (See Romano v. Rockwell Internal, Inc., supra, 14 Cal.4th at pp. 498-499, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Page v. Superior Court, supra, 31 Cal.App.4th at pp. 1215-1216, 37 Cal.Rptr.2d 529.)
While strong policy reasons may exist for permitting a Burlington/Faragher defense in harassment actions, there are also strong countervailing concerns. On the one hand, the defense may encourage employers to create antiharassment policies and effective mechanisms to combat harassment in the workplace. (Burlington, supra, 524 U.S. at p. 764, 118 S.Ct. at p. 2270, 141 L.Ed.2d at p. 654.) And it places what may be an appropriate burden on the employee to report harassment promptly and avoid the consequences that may result if the harassment becomes more severe and pervasive. (Ibid.)
On the other hand, holding employers strictly liable for harassment by supervisors gives greater assurance that the victim will be compensated, and those costs may be more easily and appropriately borne by the employer rather than the *888 harasser. (See Farmers Ins. Group v. County of Santa Clara (1995) 11 Cal.4th 992, 1016, 47 Cal.Rptr.2d 478, 906 P.2d 440.) Holding the employer automatically liable increases the likelihood that the employer will provide adequate training for its supervisors, and then monitor its supervisory staff to ensure that harassment policies are followed. A bright line rule also avoids litigation over whether a "tangible employment action" was taken against the complaining employee. Holding both the offending supervisor and the employer liable "is consistent with the Legislature's intent to provide `effective remedies which will eliminate such discriminatory practices.' " (Matthews v. Superior Court (1995) 34 Cal.App.4th 598, 606, 40 Cal. Rptr.2d 350.)
Given these differing policy considerations, any decision to make the Burlington/Faragher defense applicable to FEHA claims is one that should be made by the Legislature, not the judiciary. (Fiol v. Doellstedt, supra, 50 Cal.App.4th at pp. 1329-1330, 58 Cal.Rptr.2d 308; Strickland v. Foster (1985) 165 Cal.App.3d 114, 119, 211 Cal.Rptr. 305.)
DHS argues that failing to apply Burlington/Faragher to state claims would result in employers being held to different standards under state and federal law. Different standards between these two bodies of law may be onerous, but this fact does not render the law inherently unworkable.
DHS also asserts this variance in the law means that California employees will have no duty to report harassment before it escalates. That may be a concern for the Legislature, but it cannot be one of ours, especially where the Guidelines provide that, while an employee who has been harassed by a coemployee should inform the employer of the harassment, "an employee's failure to give such notice is not an affirmative defense." (Guidelines, section 7287.6, subd. (b)(4).)
Courts elsewhere have found Burlington/Faragher inapplicable to state claims. For example, the Michigan Supreme Court concluded that, because state statutes specifically made sexual harassment a form of unlawful discrimination, and because state case law had developed its own approach to determining employer vicarious liability for sexual harassment, the Burling ton/Faragher defense should not be applied to state claims. (Chambers v. Trettco, Inc. (2000) 463 Mich. 297, 614 N.W.2d 910, 912, 914-919.)
In Pollock v. Wetterau Food Distribution Group (Mo.Ct.App.1999) 11 S.W.3d 754, the Missouri Court of Appeals noted that state regulations unambiguously made employers strictly liable for harassment by supervisors. (Id. at p. 767.) The state agency clearly intended that no affirmative defenses be available in cases of supervisory harassment and, consequently, the court refused to permit the Burlington/Faragher defense in state claims. (Pollock v. Wetterau Food Distribution Group at, at pp. 767-768.)
Similarly, in Myrick v. GTE Main Street, Inc. (D.Mass.1999) 73 F.Supp.2d 94, the court concluded the Burlington/Faragher defense was contrary to Massachusetts law, which provided that an employer was vicariously liable for the harassment by a supervisor and had no reasonable care defense. (Id. at pp. 97-98.)
Illinois courts reached the same conclusion. In Board of Directors, Green Hills Country Club v. Illinois Human Rights Commission (1987) 162 Ill.App.3d 216, 113 Ill.Dec. 216, 514 N.E.2d 1227, the court construed a state statute virtually identical to California provisions, which made it a civil rights violation for an employer, employee or agent of any employer to engage *889 in sexual harassment, "`provided[ ] that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial or nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures.'" (Id, 113 Ill.Dec. 216, 514 N.E.2d at p. 1230.) The court ruled this language imposed strict liability on employers "for sexual harassment of their employees by supervisor personnel regardless of whether the employer knew of such conduct...." (Id. 113 Ill
.Dec. 216, 514 N.E.2d at pp. 1230-1231; see also Geise v. Phoenix Company of Chicago, Inc. (1994) 159 Ill.2d 507, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1277.) Consequently, a later state court decision concluded that the Burlington/Faragher defense was inapplicable to Illinois claims. "Unlike Title VII, under which employers are not always automatically liable for sexual harassment, in Illinois the [state law] imposes strict liability on the employer regardless of whether the employer knew of the offending conduct." (Webb v. Lustig (1998) 298 Ill.App.3d 695, 233 Ill.Dec. 119, 700 N.E.2d 220, 227.)
In contrast, states that have found Burlington/Faragher applicable to state law claims have done so because the state provisions were consistent with Title VII. (E.g., Parker v. Warren County Utility District (Tenn.1999) 2 S.W.3d 170, 171, 172, 176 [state law expressly to be construed in manner consistent with Title VII]; Bartkowiak v. Quantum Chemical Corporation (Tex.Ct.App.2000) 35 S.W.3d 103, 108-109 [state provisions to be construed in conformity with federal act].)
This abbreviated review demonstrates that the Burlington/Faragher defense is appropriately applied to state law claims only if state law is consistent with Title VII. For the reasons explained, that is not the situation in California, and judicial importation of the defense into FEHA cases is inappropriate.
We are aware that the Ninth Circuit recently predicted that California courts would reach a different conclusion. In Kohler v. Inter-Tel Technologies (9th Cir. 2001) 244 F.3d 1167, the court reviewed FEHA and Title VII provisions, and noted that FEHA requires employers to take reasonable steps to prevent harassment, a provision the court found provided "an even stronger basis for applying the federal affirmative defense than does Title VII itself." (Id. at pp. 1173-1174.) The court also noted that, because the definitions of "employer" are identical under FEHA and Title VII, the agency analysis utilized in Burlington/Faragher was equally applicable to FEHA claims. (Id. at p. 1174.) The court summarized: "[T]he plain statutory language and the policies underlying FEHA support the application of the federal affirmative defense to cases of supervisory harassment arising under FEHA where no tangible employment action was taken. Thus, there is no reason for us to believe that the California Supreme Court would deviate in this instance from its usual practice of construing FEHA in conformity with Title VII." (Id, at p. 1176.)
The Kohler court then discounted arguments that California courts imposed strict liability on employers for harassment by supervisors. The court noted that, under both the state and federal statutes, "a plaintiff may present a prima facie case of an employer's liability for a supervisor's sexual harassment without demonstrating that the employer was otherwise at fault. The only distinction is that the United States Supreme Court refers to this form of respondeat superior as `vicarious liability' and California's intermediate appellate courts call it `strict liability.' [¶] The confusion may lie in courts' tendency to interchange the terms `vicarious liability' and *890 'strict liability' in the employment context." (244 F.3d at p. 1177.) The court concluded: "[T]he California courts that state an employer is `strictly liable' for supervisory harassment use that term to indicate that an employer is liable for the conduct of his agent. The mere fact the California courts use a `strict liability' label rather than a `vicarious liability' label for the same theory of liability does not persuade us that the California Supreme Court would decline to adopt an affirmative defense to a FEHA workplace harassment action." (Id. at p. 1178.)
We do not agree. The Kohler analysis fails to give appropriate consideration to the fact that section 12940, subdivision (j)(1) sets forth a limitation on employer liability only in the case of harassment by nonsupervisory employees. Unlike Kohler, we do not believe California courts utilize the term "strict liability" as a synonym for "vicarious liability." State courts know the difference between these concepts. As one court succinctly summarized: "The case and statutory authority set forth three clear rules. First, ... a supervisor who personally engages in sexually harassing conduct is personally liable under the FEHA. Second, ... if the supervisor participates in the sexual harassment or substantially assists or encourages continued harassment, the supervisor is personally liable under the FEHA as an aider and abettor of the harasser. Third, under the FEHA, the employer is vicariously and strictly liable for sexual harassment by a supervisor." (Fiol v. Doellstedt, supra, 50 Cal.App.4th at p. 1327, 58 Cal. Rptr.2d 308, italics added.)
Kohler notes that in Reno v. Baird (1998) 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, a case involving individual liability in a discrimination context, the California Supreme Court stated it was "expressing] no opinion on the scope of employer liability under the FEHA for either discrimination or harassment." (Id. at p. 658, 76 Cal.Rptr.2d 499, 957 P.2d 1333, italics omitted.) Significantly, however, Kohler fails to recognize that the California Supreme Court gave such an opinion, albeit in dicta, in Carrisales v. Department of Corrections, supra, 21 Cal.4th at pages 1136-1137, 90 Cal.Rptr.2d 804, 988 P.2d 1083, when it echoed the rulings of the Courts of Appeal: "Section 12940[, subdivision (j)(1)] makes the employer strictly liable for harassment by an agent or supervisor, but liable for harassment by others only if the employer fails to take immediate and appropriate corrective action when reasonably made aware of the conduct."
Because Carrisales had not been decided at the time of its petition, DHS also emphasizes that Reno v. Baird left this question open. Given the California Supreme Court's subsequent statement in Carrisales, however, Reno is not particularly useful to this case. And even if we were to ignore the Carrisales comments as dicta and treat the matter as unresolved by the state Supreme Court, the strength of the statutory and case law discussed would compel us to the same conclusion.
California courts recognize that FEHA and Title VII differ in their treatment of employer liability for supervisory harassment. They also understand the policy implications involved, the statutory distinctions between FEHA and Title VII, and the Legislature's intent. "[T]he FEHA provides that an employer is strictly liable for the harassment of an employee by an agent or supervisor, while the employer is only liable for harassment of an employee by nonagents or nonsupervisors if the employer, its agents or supervisors know or should know of the harassing conduct and the employer fails to take immediate and appropriate corrective action." (Fiol v. *891 Doellstedt, supra, 50 Cal.App.4th at p. 1328, 58 Cal.Rptr.2d 308.) There is no confusion in state law on this point.
In sum, under FEHA and California case law, employers are strictly liable for the harassing conduct of supervisors, even though the employer did not know, and did not have reason to know, of the conduct. While DHS advances sound policy reasons for incorporating the Burlington/Faragher defense into state law, we recognize strong countervailing policies also exist. Under these circumstances, resolution of this question is best left to the Legislature, not the courts.

Disposition
Petition denied. The alternative writ of mandate, having served its purpose, is discharged. Real party in interest Theresa V. McGinnis shall receive her costs on appeal.
We concur: MORRISON, Acting P.J., and CALLAHAN, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.2, this opinion is certified for publication.