BOARD OF DIRECTORS, GREEN HILLS COUNTRY CLUB, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Fifth District   No. 5—86—0421

Opinion filed October 19, 1987.

Jerome E. McDonald, of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Eddie Santiago, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Samuel H. Liberman, of Clayton, Missouri, for respondents Debbie Leffler and Deborah Borah.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

The Illinois Department of Human Rights (DHR) filed two complaints with the Illinois Human Rights Commission (HRC) as a result of charges filed with the DHR by respondents Deborah Borah and Debbie Leffler against petitioner, Board of Directors of Green Hills Country Club (Green Hills). Both complaints alleged sexual harassment, retaliation and constructive discharge, in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*). Specifically, both allege that they were continually subjected to lewd and derogatory language, as well as unwelcome sexual advances and propositions by the club manager, Dane Werk, and that the work environment became so intolerable that they were forced to resign. Both cases were consolidated for purposes of hearing and decision on a motion by Green Hills.

After a hearing before the administrative law judge (ALJ) on March 21 and 22, 1985, the Commission adopted the findings and recommendations of the ALJ and ruled that both Ms. Borah and Ms. Leffler had been subjected to sexual harassment and constructive discharge, but had failed to establish a *prima facie* case of retaliation. The Commission found further that both complainants had mitigated their damages. The HRC ordered that Green Hills reinstate Ms. Borah and Ms. Leffler and pay them an amount equal to any loss in wages incurred as a result of their civil rights violations. The matter is now before us on administrative review as provided by section 8—111 of the Human Rights Act. Ill. Rev. Stat. 1985, ch. 68, par. 8—111.

On appeal, Green Hills does not contest the HRC's determination that Werk's conduct constituted sexual harassment, it argues only that neither the board of directors nor the president of the club were aware of the harassment being perpetrated by Mr. Werk and, absent any knowledge on their part, Green Hills cannot be held liable for Mr.

Werk's conduct. Green Hills also argues the evidence did not support the respondents' claims of constructive discharge, that is, Werk's conduct was not the cause of the employees' quitting their employment, and that the HRC erred in finding that the respondents mitigated their damages.

Respondent Deborah Borah was hired as a waitress by Green Hills Country Club in March of 1981. Ms. Borah was later promoted to assistant manager and was then made acting manager, with the understanding that this was only temporary and someone else would be hired for the position of manager.

On November 27, 1982, Dane Werk was hired as manager by Wayne Krehbiel, the president of Green Hills Country Club. As manager, Mr. Werk was given complete control of the club's day-to-day operation and neither Mr. Krehbiel nor any of the stockholders or directors participated in the management of the club. From November 1982 until January 27, 1983, Ms. Borah continued in her role as acting manager and was responsible for familiarizing Mr. Werk with the club's operating procedures. A number of witnesses testified that there was obvious friction between Ms. Borah and Mr. Werk from the outset.

On January 27, 1983, after having become familiar with the operation of the club, Mr. Werk relieved Ms. Borah of her position as assistant manager, changed her from a salaried to an hourly employee, and reduced her hours of employment. After that day, Ms. Borah discussed the situation with Mr. Krehbiel, advising him that working conditions had become intolerable. Mr. Krehbiel informed her that he did not wish to interfere with Mr. Werk's management of the club and that Werk's decisions on the day-to-day operation of the club were final. Ms. Borah thereafter quit her job at Green Hills.

Respondent Debbie Leffler was hired as a waitress on March 17, 1983. Shortly after Ms. Borah quit, David Byram was hired as assistant manager. On or about June 1, 1983, Ms. Leffler and Mr. Byram had a heated argument concerning some empty boxes cluttering the kitchen area through which the waitresses traveled. During the course of the argument, Mr. Byram either called Ms. Leffler a "bitch" or said that she was always "bitching." When Ms. Leffler complained about Mr. Byram's language to Mr. Werk, she was told that Byram could talk to her any way he wanted. Ms. Leffler clocked out at the end of the day and did not return.

The record indicates that during his tenure as manager, Mr. Werk used obscene, derogatory and generally offensive language towards all the club's employees, particularly the females, calling them "bitches" and "whores" on numerous occasions. Mr. Werk also asked Ms. Leffler

if she would like to sleep with Mr. Krehbiel and while he considered this suggestion a joke, Ms. Leffler and the other waitresses present did not and found the proposition offensive. Mr. Werk made a similar suggestion to Ms. Borah and another female employee, Kim Rice. Furthermore, Mr. Werk propositioned two other female employees, Shelly Walker and Kathy Bailey, and admitted that he made sexually suggestive physical contact with Ms. Bailey on several occasions.

When first hired, Mr. Werk had called a meeting of all the employees at which he informed them that if any of them attempted to circumvent his authority by going to the president or any of the members of the board of directors, they would be fired. Despite Mr. Werk's admonition not to go over his head, Ms. Borah and Ms. Leffler informed both Mr. Krehbiel and Marguerite Piper, wife of a stockholder, of Werk's use of derogatory language towards his female employees. Ms. Borah complained to Mr. Krehbiel on three separate occasions and Ms. Piper also spoke with him about Werk's behavior. Mr. Krehbiel was not, however, told of the sexual advances or propositions made to any of the female employees and was not aware that Mr. Werk had suggested to respondents that they engage in sex with him.

■ The issue of vicarious liability of employers for sexual harassment, while a case of first impression in Illinois, has been the subject of numerous decisions in Federal courts. Both Green Hills and the HRC rely substantially on Federal law in their briefs. While Federal decisions are not controlling, they provide relevant and helpful precedents. *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 363, 315 N.E.2d 344, 348.

Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of gender. In 1980, the Equal Employment Opportunity Commission (EEOC) issued guidelines which provided that sexual harassment, as defined therein, was a form of sex discrimination prohibited by Title VII. (29 C.F.R. sec. 1604.11(a) (1987).) Under the guidelines, sexual harassment falls into two categories: first, *quid pro quo* cases where the employee suffers a tangible job detriment as a result of the sexual harassment and second, where the harassment creates an "intimidating, hostile, or offensive work environment." (29 C.F.R. sec. 1604.11(a)(3) (1987).) Since the guidelines were issued, Federal courts have uniformly held that sexual harassment which creates a hostile work environment is a violation of Title VII.

The EEOC guidelines also state that "[a]n employer *** is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer

and regardless of whether the employer knew or should have known of their occurrence." 29 C.F.R. sec. 1604.11(c) (1987).

While EEOC guidelines are given great deference by Federal courts, they do not have the force and effect of law (*Ferguson v. E. I. duPont de Nemours & Co.* (D. Del. 1983), 560 F. Supp. 1172, 1198) and, thus far, Federal courts have declined to adopt the strict liability standard set out in section 1604.11(c) in "hostile environment" type sexual harassment cases. In *Meritor Savings Bank FSB v. Vinson* (1986), 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399, the Supreme Court, while declining to issue a definitive rule on employer liability, rejected the strict liability standard, holding that in "hostile environment" sex discrimination cases it was an error to disregard entirely agency principles and impose strict liability on employers for acts of their supervisors absent knowledge on the part of the employer. 477 U.S. 57, 73, 91 L. Ed. 2d 49, 59, 106 S. Ct. 2399, 2409.

■ The Illinois legislature has, however, adopted a definitive rule on employer liability for sexual harassment. Section 2—102(D) of the Illinois Human Rights Act specifically provides that it is a civil rights violation

> "[f]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial or nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." (Ill. Rev. Stat. 1985, ch. 68, par. 2—102(D).)

This statute clearly indicates that employers are liable for sexual harassment of their employees by supervisory personnel regardless of whether it is *quid pro quo* or "hostile environment" type harassment and regardless of whether the employer knew of such conduct. Further, State statutes, unlike EEOC guidelines, are mandatory authority and are binding upon the courts of Illinois.

The ALJ found that the employer should have known of Werk's conduct, and the parties have discussed at length the employer's knowledge, actual or constructive, of Werk's conduct, in the belief this court would follow the eventual interpretation of Federal law as developed in *Meritor Savings Bank*. In the view we take of Illinois law, we need not address the HRC's finding that the employer had actual or constructive knowledge of Werk's conduct.

While section 2—102(D) was not in effect at the time the conduct complained of in this case occurred, we held in *Old Ben Coal Co. v.*

*Human Rights Com.* (1986), 150 Ill. App. 3d 304, 501 N.E.2d 920, that the amendment adding section 2—102(D) to the Illinois Human Rights Act was not a change in the law as it formerly existed, but was merely a clarification of an already existing proscription against sexual harassment. 150 Ill. App. 3d 304, 307, 501 N.E.2d 920, 923.

■ We further believe, and now hold, that not only was sexual harassment prohibited by the Illinois Human Rights Act prior to the effective date of section 2—102(D), but also that employers were strictly liable for sexual harassment of their employees by supervisor personnel regardless of whether the employer knew of such conduct prior to the amendment adding section 2—102(D) to the Illinois Human Rights Act.

■ Green Hills also argues that the evidence did not support the HRC's finding of constructive discharge. Green Hills maintains that there is no evidence to show that Ms. Borah or Ms. Leffler quit her job as a result of sexual harassment or discrimination. Constructive discharge occurs when an employer deliberately makes working conditions so intolerable as to force an involuntary resignation. Where an employee is subjected to sexual harassment, or any other form of illegal discrimination, this standard is clearly met. Employees need not tolerate violations of their civil rights as a condition of employment. The evidence supports the determination of the HRC, which we are required to accept absent a clear abuse of discretion (*Loyola University of Chicago v. Human Rights Com.* (1986), 149 Ill. App. 3d 8, 16-17, 500 N.E.2d 639, 645), that both Ms. Borah and Ms. Leffler were victims of sexual harassment and that both complainants resigned because of such harassment. We believe the HRC properly concluded that Ms. Borah and Ms. Leffler were constructively discharged.

■ Finally, Green Hills appeals the HRC's finding that the complainants mitigated their damages. An examination of the record shows that both complainants were employed for various periods after quitting Green Hills, that they sent out resumes and generally endeavored to remain employed. Green Hills introduced no evidence to contradict this and we cannot say that the HRC erred in its ruling.

The decision and order of the Human Rights Commission is affirmed.

Affirmed.

WELCH and HARRISON, JJ., concur.