(Nos. 105517, 105518 cons.—

SANGAMON COUNTY SHERIFF'S DEPARTMENT, Appellee, v. THE ILLINOIS HUMAN RIGHTS COMMISSION *et al.*, Appellants.

*Opinion filed April 16, 2009.*

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Human Rights Commission.

Mary Lee Leahy, of Springfield, for appellant Donna Feleccia.

William P. Hardy, D. Bradley Blodgett and J. William

Roberts, of Hinshaw & Culbertson LLP, of Springfield, for appellee.

Randall D. Schmidt, of Chicago, and John A. Cise, law student, for *amicus curiae* Employment Discrimination Project of the University of Chicago Law School's Edwin F. Mandel Legal Aid Clinic.

Roger Huebner and Brian Day, of Springfield, for *amicus curiae* Illinois Municipal League.

Clifford G. Kosoff and Edie P. Steinberg, of O'Halloran Kosoff Geitner & Cook, LLC, of Northbrook, for *amicus curiae* Illinois Counties Risk Management Trust.

JUSTICE BURKE delivered the judgment of the court, with opinion.
Chief Justice Fitzgerald and Justices Thomas and Kilbride concurred in the judgment and opinion.
Justice Karmeier dissented, with opinion, joined by Justice Garman.
Justice Freeman took no part in the decision.

## OPINION

Donna Feleccia, a records clerk with the Sangamon County sheriff's department (Sheriff's Department), filed a charge of sexual harassment and retaliation against the Sheriff's Department and Ron Yanor, a sergeant. Yanor was a supervisor in the Sheriff's Department but was not Feleccia's supervisor.

Following a hearing, an administrative law judge (ALJ) concluded that Feleccia failed to establish her claims and recommended that the claims be dismissed with prejudice. The Illinois Human Rights Commission (Commission) adopted the ALJ's recommendation to dismiss the retaliation charge but found that Feleccia

established sexual harassment based on a hostile work environment. The Commission found as a matter of law that the Sheriff's Department was strictly liable for Yanor's harassment of Feleccia because he was a supervisory employee. 775 ILCS 5/2—102(D) (West 1998).

The appellate court reversed, finding that Yanor was a coemployee of Feleccia. 375 Ill. App. 3d 834, 847. As such, the Sheriff's Department was not liable for Yanor's harassment of Feleccia because it took reasonable corrective measures upon learning of the harassment. 375 Ill. App. 3d at 847-48.

We granted the petitions for leave to appeal filed by Feleccia and the Commission, pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315). The actions were consolidated for purposes of review. We find that the Sheriff's Department is strictly liable for Yanor's harassment based on his status as a supervisory employee and accordingly reverse the appellate court's judgment reversing the Commission's order.

### BACKGROUND

Under section 2—102(D) of the Illinois Human Rights Act (Act):

"It is a civil rights violation: *** [f]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." 775 ILCS 5/2—102(D) (West 1998).

In her charge, filed June 15, 1999, Feleccia alleged three counts: (1) that Yanor had retaliated against her because she refused to engage in sexual activity with him; (2) that Yanor's actions, and the Sheriff's Department's response, created a hostile, embarrassing, and intimidating work environment; and (3) that she experi-

enced different terms and conditions of employment following her report of the sexual harassment.

The Illinois Department of Human Rights issued a notice of substantial evidence as to counts I and II and a notice of dismissal of count III for lack of substantial evidence and lack of jurisdiction over Yanor. It filed a complaint with the Commission on Feleccia's behalf, alleging sexual harassment and retaliation against the Sheriff's Department and Yanor. Yanor subsequently was dismissed from the case after settling the claims against him.

The parties proceeded to an administrative hearing on January 9, 2003. Feleccia testified that she began working as a records clerk on June 4, 1992. In 1998 and 1999, her job duties involved entering warrants and orders of protection into the computer system and taking orders of protection to the squad room to be served by the deputies. Feleccia worked on the first shift from 9 a.m. to 5:30 p.m. At that time, Yanor was a patrol division sergeant working on the second shift from 2:30 p.m. to 11:30 p.m. Yanor was a supervisor but had no supervisory authority over Feleccia, who worked in a separate division of the Sheriff's Department.

On February 5, 1999, Feleccia received a letter in her office mail, dated January 29, 1999, that appeared to be on Illinois Department of Public Health letterhead. It read, in part:

"Dear Ms. Feleccia: This is to inform you that you may have recently been exposed to a communicable or sexually transmitted disease. A confidential source who has tested positive has brought this matter to our attention.

To insure privacy, your file has been assigned a control number of #A23759. Please refer to this in future correspondence.

It is important that you schedule a screening within the next 7 days. Please contact your local public health office for an appointment. This service is provided at no cost to you.

Yours truly,
Julie A. Chelani, MSW Patient Advocate."

When Feleccia read the letter, she became very upset and started shaking. She brought the letter to her supervisor, Lieutenant Sandra Hinsey. Feleccia was crying and unable to speak. Hinsey escorted Feleccia to the office of the Illinois Department of Public Health, which confirmed that the letter was a forgery. When they returned to the office, Hinsey gave the letter to her supervisor, Chief Deputy Tony Sacco.

Hinsey told Feleccia to "act normal," and told her not to say anything until the investigation was complete. Feleccia testified that other people in the department heard about the forged letter. A sheriff's deputy called her to say that he had heard her "affair with Yanor" went wrong. She told him that his information was incorrect, but that she could not discuss it. On the same day, another deputy told Feleccia's coworker that he had heard Feleccia had a disease.

Sacco ordered the internal affairs division to investigate the matter. The Illinois State Police submitted a report indicating that Yanor's fingerprints were found on the letter. On April 22, 1999, Yanor admitted in an interview that he had typed the letter on a typewriter in the squad room, using old stationery from the Illinois Department of Public Health. Yanor said he had intended the letter as a practical joke. Yanor was advised not to have any contact with Feleccia.

On May 18, 1999, Yanor received a disciplinary memorandum from Sheriff Neil Williamson, which stated, in part:

"Based on the outcome of a Professional Standards internal investigation sustaining the fact you admitted to violating the Sheriff's Office Sexual Harassment Policy, I am hereby suspending you for four (4) days without pay to be served consecutively by June 11, 1999.

I cannot express enough my disappointment in you,

especially representing me and this office in your capacity as a supervisor. Your actions were reckless and showed lack of judgement.

Any further actions of this magnitude will result in a substantially harsher suspension and possible demotion or termination." (Emphasis in original.)

When Feleccia asked Sheriff Williamson about the discipline imposed on Yanor, Williamson told her that he "gave [Yanor] as many days as he could without the merit board finding out." Williamson told Feleccia not to file sexual harassment charges, not to go to the media, and not to go near Yanor. He informed her that the Illinois Department of Public Health had opted not to press criminal charges.

Feleccia said she felt "degraded," "insignificant[,] and not important" because nothing more was done. She was upset that the department accepted the letter as a joke. Feleccia had been seeing a psychiatrist for anxiety and "work stress" since 1996. After the incident with the forged letter, she began seeing her doctor more frequently, the dosage of her medication was doubled, and she lost sleep and missed work days.

On June 10, 1999, Feleccia met with Chief Deputy Sacco and Mike Walton, director of support services for the Sheriff's Department. Feleccia told them that she was unhappy with the way the matter was handled because other employees were talking about the incident. Feleccia informed Sacco and Walton about prior incidents of sexual harassment by Yanor. Sacco told Feleccia that she should have come forward at the time of the incidents so that actions could have been taken to stop the behavior. He told her to document the incidents in writing and to send them to him. Sacco testified that he never received the requested documentation.

In Walton's June 15, 1999, memorandum, he noted that Feleccia saw her doctor on June 14, and that the doctor advised her to take off work until at least June

21, due to problems she was having over the " 'Yanor' incident."

Feleccia testified about several incidents of sexual harassment by Yanor that took place in November and December 1998. In November 1998, Yanor called Feleccia at home after an annual "cigar dinner" attended by sheriff's deputies and asked her to go to Chantilly Lace, a local bar. He told her that everyone from the party would be at the bar. Feleccia agreed to go to the bar with Yanor. She assumed Yanor's wife would be with him, but Yanor was alone when he came to pick up Feleccia. When they arrived at the bar, Feleccia saw only one other person from the cigar dinner. She felt uncomfortable and asked Yanor to take her home. As Feleccia was exiting the car, Yanor grabbed her arm and asked for a kiss. Feleccia refused, telling Yanor that he was married and that they were just friends. When he would not release her arm, Feleccia kissed him. She said she felt threatened because Yanor would not let go until she kissed him.

In December 1998, Yanor came to Feleccia's house unexpectedly to give her a Christmas cup filled with candies. She told him he did not have to do that. Yanor left when Feleccia's ex-husband arrived to drop off one of her children.

Later that month, Feleccia attended a party with her friend MerriEllen King. After the party, they went to a bar, where Feleccia saw Yanor. Both Feleccia and King testified that Yanor was glaring at Feleccia while the women were dancing. He asked her if she wanted to dance with him, and she said no. After about 45 minutes, Feleccia told King she wanted to leave because she felt uncomfortable.

On another occasion in December 1998, Feleccia was working alone in the records office after 5 p.m., when Yanor approached and asked her if she would like to go with him to a motel for the night. She told him "no,"

that he was married, and that they would always be "just friends."

Following the hearing, the ALJ recommended that the Commission dismiss the complaint with prejudice because Feleccia failed to establish a *prima facie* case of sexual harassment or retaliation.

The Commission adopted the ALJ's recommendation regarding the retaliation charge because there was no evidence that the Sheriff's Department punished Feleccia for complaining about Yanor. On the sexual harassment charge, the Commission concluded that Feleccia established "that Yanor committed a variety of sexually harassing acts that cumulatively constitute[d] a hostile work environment," and that the Sheriff's Department was liable for the harassment because Yanor was a supervisor. The Commission awarded Feleccia $10,000 in damages and approximately $13,400 in fees and costs.

The Sheriff's Department filed a petition for review in the appellate court. The appellate court reversed the Commission, finding that the Sheriff's Department could not be strictly liable for Yanor's conduct because he was not Feleccia's supervisor. 375 Ill. App. 3d at 847. The court held that the evidence showed the Sheriff's Department took reasonable corrective measures upon learning of Yanor's harassment by suspending him for four days without pay and issuing a letter of reprimand. 375 Ill. App. 3d at 847-48.

We granted the petitions for leave to appeal filed by Feleccia and the Commission (210 Ill. 2d R. 315), and consolidated the petitions for purposes of review. We granted leave for the Employment Discrimination Project at the University of Chicago Law School's Edwin F. Mandel Legal Aid Clinic to file an *amicus curiae* brief in support of Feleccia, and for the Illinois Counties Risk Management Trust and the Illinois Municipal League to file *amicus curiae* briefs in support of the Sheriff's Department. 20 Ill. 2d R. 345.

ANALYSIS

## I. Strict Liability

In an administrative review action, we review the decision of the administrative agency, not the appellate court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 539 (2006). This case involves the construction of a statute, a question of law. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510-11 (2007). An administrative agency's decision on a question of law is reviewed *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). "Nevertheless, the interpretation of a statute by involved administrative bodies constitutes 'an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted.' " *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 116 (2005), citing *Johnson v. Marshall Field & Co.*, 57 Ill. 2d 272, 278 (1974).

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Wade*, 226 Ill. 2d at 509-10. The best indication of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Cinkus*, 228 Ill. 2d at 216. Where the statutory language is clear and unambiguous, it is unnecessary to turn to other tools of construction. *Cinkus*, 228 Ill. 2d at 217. " 'A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses.' " *Wade*, 226 Ill. 2d at 511, quoting *People v. Jameson*, 162 Ill. 2d 282, 288 (1994).

Illinois courts have interpreted section 2—102(D) as imposing strict liability on an employer for the sexual harassment of an employee by the employee's direct supervisor. See *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 518 (1994); *Webb v. Lustig*, 298 Ill. App. 3d 695, 705 (1998); *Board of Directors, Green Hills Country*

*Club v. Human Rights Comm'n*, 162 Ill. App. 3d 216, 220-21 (1987). In other words, the employer is liable for the sexual harassment regardless of whether the employer knew of the offending conduct (*Geise*, 159 Ill. 2d at 518) and regardless of whether the conduct is *quid pro quo* sexual harassment or "hostile environment" sexual harassment. *Green Hills*, 162 Ill. App. 3d at 220.

The issue in this case is whether an employer is strictly liable under section 2—102(D) for the "hostile environment" sexual harassment of its supervisory employee, where the supervisor has no authority to affect the terms and conditions of the complainant's employment. The answer is yes.

Section 2—102(D) is unambiguous. Under the plain language of the statute, an employer is liable for the sexual harassment of its employees. Where the offending employee is either a "nonemployee" or "nonmanagerial or nonsupervisory employee," an employer is responsible for the harassment only if it was aware of the conduct and failed to take reasonable corrective measures. The facts of this case do not fall within the limitation in the second clause of section 2—102(D). Yanor is neither a "nonemployee" nor a "nonmanagerial or nonsupervisory employee." Therefore, under the statute, the Sheriff's Department is liable for Yanor's sexual harassment of Feleccia regardless of whether it was aware of the harassment or took measures to correct the harassment.

The Sheriff's Department contends that we should look to the dictionary definition of "supervisor" to ascertain the plain meaning of the term. We find it unnecessary to do so, where there is no dispute that Yanor is a supervisory employee of the Sheriff's Department. Whether Yanor had direct supervisory authority over Feleccia's working conditions is irrelevant under the plain language of section 2—102(D). There is no language in the Act that limits the employer's liability based on

the harasser's relationship to the victim. Where the statutory language is clear, we may not read into it limitations that the legislature did not express. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 144 (2006).

The Sheriff's Department contends that this court should follow federal law interpreting Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.*), based on the similarities between Title VII regulations and the Act. Under Title VII, an employer's liability for "hostile environment" sexual harassment depends on the harasser's status relative to the victim. See, *e.g.*, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 141 L. Ed. 2d 633, 655, 118 S. Ct. 2257, 2270 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 141 L. Ed. 2d 662, 689, 118 S. Ct. 2275, 2292-93 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee"); *Hall v. Bodine Electric Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (to impute liability to the employer under Title VII, "[a]n individual is not a supervisor unless he possesses the authority to *directly* affect the terms and conditions of a victim's employment" (emphasis in original)).

Although in other instances Illinois courts have found it appropriate to examine federal decisions when construing the Act (see, *e.g.*, *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178-79 (1989); *Trayling v. Board of Fire & Police Commissioners*, 273 Ill. App. 3d 1, 11 (1995)), we find the federal case law to be unhelpful in interpreting section 2—102(D).

Under Title VII, "employers are not always automatically liable for sexual harassment by their supervisors where the misconduct has created an intimidating, hostile or offensive work environment," and "[a]dditional

grounds for employer liability may be required." *Geise*, 159 Ill. 2d at 518. By contrast, the Act has no such requirement. *Geise*, 159 Ill. 2d at 518. "Where an employee has been sexually harassed by supervisory personnel, *** the Act imposes strict liability on the employer, regardless of whether the employer knew of the offending conduct." *Geise*, 159 Ill. 2d at 518, citing *Green Hills*, 162 Ill. App. 3d at 221; *Webb*, 298 Ill. App. 3d at 705. On the issue of employer liability in a sexual harassment claim, we are bound by the language in the Act, not by decisions of the federal courts.

The Sheriff's Department and the *amici* contend that, even if we accept the plain language of the statute as applying to all supervisory employees, this construction of the statute leads to bizarre and unjust results unintended by the legislature. They suggest that large employers such as multilayered corporations and governmental entities would be strictly liable any time a low-level supervisor, regardless of ability to control the complainant's working environment, sexually harasses any employee in any location. This argument carries little weight. First, our holding as to the strict liability of the employer does not obviate the necessity of establishing a *prima facie* case of sexual harassment. For "hostile environment" sexual harassment, the Act requires an employee to prove that the harasser engaged in "unwelcome sexual advanaces or requests for sexual favors or any conduct of a sexual nature," which "has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." 775 ILCS 5/2—101(E) (West 1998). The facts in the case at bar—the close proximity of Feleccia's and Yanor's offices; Yanor's access to Feleccia's desk and the office mail system; his awareness of her working hours; and their common acquaintances with other coworkers—contributed to Feleccia's abil-

ity to establish that Yanor created an intimidating, hostile, or offensive working environment.

Second, it is not unfair to hold employers responsible for sexual harassment by supervisory employees. "[A] supervisor's sexual harassment is imputed to the employer on the basis that a supervisor is empowered to act on the employer's behalf." *Pinnacle Ltd. Partnership v. Human Rights Comm'n*, 354 Ill. App. 3d 819, 829 (2004), citing *In re Forbes*, Ill. Hum. Rts. Comm'n Rep. 1993CF2987, slip op. at 6 (August 1, 1997) (noting that "managerial and supervisory employees act on behalf of the employer, and in that way[,] there is a certain identity of employer and managerial/supervisory employees"). Not only are supervisors the "public face" of the employer, but employers are in the best position to train supervisors and make them aware of the law prohibiting sexual harassment.

Based on the identity of employer and managerial/ supervisory employees, the employer is presumed to have notice of sexual harassment committed by managerial and supervisory employees. The Sheriff's Department recognized that Yanor was acting on its behalf when Sheriff Williamson stated in his disciplinary memorandum to Yanor: "I cannot express enough my disappointment in you, especially representing me and this office in your capacity as a supervisor." Yanor's higher status as a supervisor in the Sheriff's Department afforded him greater power to harass a lower-level employee such as Feleccia.

Furthermore, as remedial legislation, the Act should be construed liberally to achieve its purpose—the prevention of sexual harassment in employment for all individuals. 775 ILCS 5/1—102(A), (B) (West 1998); *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n*, 88 Ill. 2d 22, 26 (1981). A liberal reading of section 2—102(D) ensures that victims have

full incentive to report harassment. Even where a supervisor does not have direct authority over the employee's working conditions, an employee may have a reasonable belief of retaliation if she reports the harassment. Supervisors are often better connected and have greater job security than the victims. An employee may fear that the supervisor is more likely to be believed, thus putting the employee's job at risk.

Based on the plain language of section 2—102(D), and the public policy reasons supporting employer liability, we find that employers are strictly liable for the sexual harassment of an employee by a supervisory employee.

II. Establishment of the Sexual Harassment Charge

The Sheriff's Department contends, alternatively, that Feleccia failed to meet her burden of establishing sexual harassment. At the outset, the department argues that the Commission wrongly considered Yanor's acts that occurred prior to sending the forged letter. Section 7A—102(A)(1) of the Act provides that, "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department ***." 775 ILCS 5/7A—102(A)(1) (West 1998). The 180-day filing requirement is mandatory in order to vest the Commission with subject matter jurisdiction of the charge. *Allen v. Lieberman*, 359 Ill. App. 3d 1170, 1177 (2005); *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 437 (2003); *Faulkner-King v. Department of Human Rights*, 225 Ill. App. 3d 784, 791 (1992). The Commission held that because one act—the letter—contributed to the hostile work environment within the 180-day period, all of Yanor's behavior should be considered in determining liability.

A sexual harassment claim based on a hostile work environment generally is made up of a series of events

rather than a single event. Such a charge is timely as long as it is filed within 180 days of any act that is part of the hostile work environment. *Jenkins v. Lustig*, 354 Ill. App. 3d 193, 196-97 (2004); *Gusciara v. Lustig*, 346 Ill. App. 3d 1012, 1019-20 (2004), citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 153 L. Ed. 2d 106, 124, 122 S. Ct. 2061, 2074 (2002) ("[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' "), quoting 42 U.S.C. §2000e—5(e)(1) (2000). Provided that an act contributing to the claim occurs within 180 days of the filing date, a fact finder may consider all of the conduct that makes up the hostile environment claim. *Jenkins*, 354 Ill. App. 3d at 196-97. We find that the Commission properly considered all of the charged conduct by Yanor because part of Feleccia's claim occurred within 180 days of the date she filed her charge.

Turning to the merits of Feleccia's sexual harassment claim, our review of the Commission's decision is limited to determining whether it was against the manifest weight of the evidence. *Pinnacle*, 354 Ill. App. 3d at 828; *Trayling*, 273 Ill. App. 3d at 10. "If the record contains any evidence supporting the Commission's decision, we must sustain the decision on review." *Pinnacle*, 354 Ill. App. 3d at 828.

The Act defines sexual harassment as:

"any unwelcome sexual advances or requests for sexual favors or *any conduct of a sexual nature* when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) *such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.*" (Emphases added.) 775 ILCS 5/2—101(E) (West 1998).

The Commission's finding that Yanor committed a variety of sexually harassing acts that cumulatively constituted a hostile work environment was not against the manifest weight of the evidence. With regard to the forged Department of Public Health letter, the Commission found that Yanor's conduct promoted a sexual atmosphere at the Sheriff's Department generally and in Feleccia's work life particularly. It communicated a humiliating and false allegation of a sexual nature. See *State of Illinois v. Human Rights Comm'n*, 178 Ill. App. 3d 1033, 1048 (1989) (offensive terms and remarks describing sexual acts, bodily functions, and parts of the female anatomy constituted "conduct of a sexual nature"). The letter was prepared at the Sheriff's Department on its equipment, delivered through inter-office mail, and opened by Feleccia at the office. She and another employee stopped working in order to deal with the letter. Sheriff Williamson directed department resources toward the investigation and involved an independent law enforcement agency.

The Sheriff's Department contends that Feleccia failed to show that Yanor's conduct substantially interfered with her work performance because both Feleccia and Hinsey testified that Feleccia continued to work throughout the alleged incidents with Yanor, and that her working conditions did not change even after she received the forged letter. To the contrary, Feleccia testified that she missed work days and sleep because of the incident with the letter. The Sheriff's Department documented that Feleccia missed at least one week of work due to the incident. Moreover, the statute allows an employee to prove sexual harassment by showing *either* that the conduct substantially interfered with her work performance or that the conduct created "an intimidating, hostile or offensive working environment." 775 ILCS 5/2—101(E) (West 1992). The evidence of the forged let-

ter, together with the other conduct proved by Feleccia, was sufficient to establish a hostile working environment under the Act.

## CONCLUSION

In light of our decision that the Sheriff's Department is strictly liable for sexual harassment by its supervisory employee, we find it unnecessary to address Feleccia's remaining contention that the Sheriff's Department failed to take reasonable corrective measures after becoming aware of the sexual harassment.

For the foregoing reasons, we find that the decision of the Commission is supported by the record and is not against the manifest weight of the evidence. Accordingly, the judgment of the appellate court is reversed and the decision of the Commission is confirmed.

*Appellate court judgment reversed;*
*Illinois Human Rights Commission decision confirmed.*

JUSTICE FREEMAN took no part in the consideration or decision of this case.

JUSTICE KARMEIER, dissenting:

I agree with the majority that the Commission properly considered acts by Yanor which occurred prior to sending the forged letter. I also support its conclusion that the Commission's finding regarding the existence of a hostile work environment was not against the manifest weight of the evidence. Where I part company with my colleagues is on the question of whether the Sheriff's Department should be held vicariously liable for Yanor's misconduct.

Contrary to the majority, I believe that the appellate court was correct when it concluded that vicarious liability cannot be imposed here because, with respect to Feleccia, Yanor was merely a coemployee. He was not a manager or supervisor within the meaning of section

2—102(D) of the Illinois Human Rights Act (775 ILCS 5/2—102(D) (West 1998)). The Sheriff's Department could therefore only be held liable for Yanor's harassment of Feleccia if it knew or should have known about the harassment and failed to take reasonable corrective measures. Such was not the case. The evidence established that upon learning of Yanor's harassment of Feleccia, the Sheriff's Department launched an investigation into who wrote the fictitious Department of Public Health letter. When it discovered that the author was Yanor, it suspended him for four days without pay and issued him a letter of reprimand. See *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 375 Ill. App. 3d 834, 848 (2007).

In construing section 2—102(D) of the Illinois Human Rights Act to impose strict liability under the facts before us, the majority makes some entirely valid points as to why supervisory status should be defined broadly enough to include employees such as Yanor who have no actual authority to affect the terms and conditions of their victim's employment. The problem with the majority's analysis, in my view, is that it fails to acknowledge an important factor. Sexual harassment of an employee by a supervisor triggers vicarious liability on the part of an employer not simply because the employer is assumed to have greater knowledge of and control over a supervisor's behavior, but also because such harassment is qualitatively worse than such harassment by nonsupervisory employees. The reason it is qualitatively worse is that harassment by supervisors involves an abuse of power. The potential for such abuse is not present when, as here, the parties involved have no authority over one another.

Federal law acknowledges this distinction by conditioning an employer's vicarious liability on, among other things, a determination that an offending supervisor had

146

the authority to directly affect the terms and conditions of a victim's employment. See, *e.g.*, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 141 L. Ed. 2d 633, 655, 118 S. Ct. 2257, 2270 (1998). When analyzing claims of discrimination under the Act, Illinois courts have looked to the standards applicable to analogous federal claims. See *Wanless v. Human Rights Comm'n*, 296 Ill. App. 3d 401, 404 (1998). Unlike the majority, I believe we should do so here as well. There is no indication that the General Assembly intended to make Illinois law more expansive than its federal counterpart. I note, moreover, that by adopting the construction it does, the majority not only goes beyond the principles governing sexual harassment claims under federal law, it imposes a standard of liability which appears to be without precedent in any jurisdiction of the United States.

For the foregoing reasons, I respectfully dissent.

JUSTICE GARMAN joins in this dissent.