2025 IL App (1st) 240766-U

No. 1-24-0766

Order filed May 9, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PATRICK HAMILTON, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human |
| | ) | Rights Commission. |
| | ) | |
| v. | ) | Charge No. 2019 CP 0720 |
| | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and JEWEL | ) | |
| FOOD STORES, INC., | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Commission's final order is affirmed where appellant has not shown that the Commission's findings were against the manifest weight of the evidence or any other basis for overturning its decision.

¶ 2    Petitioner Patrick Hamilton appeals *pro se* from a final order of the Human Rights Commission (Commission) which adopted and declined further review of the recommended order

and decision (ROD) of the administrative law judge (ALJ). On appeal, Hamilton alleges that the ALJ erred in recommending that the Commission dismiss his charge of race discrimination by respondent Jewel Food Stores, Inc. (Jewel). We affirm.

¶ 3       On December 5, 2018, Hamilton filed a *pro se* charge of discrimination containing two counts with the Illinois Department of Human Rights (Department). Hamilton alleged that Jewel denied him the full and equal enjoyment of its facility and services on two separate occasions in 2018 due to his race, Black, in violation of the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq*. (West 2018)).

¶ 4       Count A involved an in-person interaction with William Tolston, an assistant manager at Jewel. Count B involved a subsequent telephone conversation with Tolston.[1] The Department dismissed both counts on February 10, 2020. On February 26, 2020, Hamilton filed a timely request for review with the Commission, and on August 13, 2020, the Commission sustained the Department's dismissal of count A, but vacated the dismissal of count B and remanded for a finding of substantial evidence on that count only. The Department thereafter issued a finding of substantial evidence as to count B and Hamilton requested the Department file a complaint with the Commission on count B.

¶ 5       On November 9, 2020, the Department filed a complaint, alleging that on June 1, 2018, Hamilton, who is Black, visited Jewel's Homewood store and ordered seafood. A non-Black Jewel

_____

[1] Hamilton's complaint indicates that the Department investigated his claim and discovered that the date of the call was June 9, 2018. However, Hamilton testified, and the ROD indicates, that the telephone call occurred on July 2, 2018, the same date he filed a complainant information sheet with the Department. A November 14, 2018, letter from Hamilton to the Department reflects that the telephone call occurred "[o]n or about a week" after the in-store interaction. But the record is also inconsistent regarding the exact date of the in-store interaction. Specifically, Hamilton's complaint and Jewel's answer reflect that the in-store interaction occurred on June 1, 2018. The ROD, however, indicates that the in-store interaction occurred on June 2, 2018.

employee called for Tolston, who is Black, to assist in the transaction. After Hamilton purchased his items, Tolston confirmed that the cashier had scanned all of the items. On June 9, 2018, Hamilton telephoned Jewel's Homewood location to learn if Tolston was on duty because Hamilton did not want to go to the store if Tolston was working. Tolston answered the phone, recognized Hamilton's voice, and said, "I know who you are n***, don't come back here to this store." As a result of the two incidents, Hamilton did not return to the Jewel Homewood store.

¶ 6    On April 7, 2022, the case proceeded to a public hearing before an ALJ. The ALJ asked Hamilton, who proceeded *pro se*, whether he intended to call witnesses. Hamilton responded that he did not, but explained that he previously "submitted" affidavits. The ALJ explained that "live witnesses are obligated to appear and give their testimony," and although Hamilton "could try to move to have [the affidavits] admitted, *** in the normal course of events, I would deny that."

¶ 7    Hamilton testified that in June 2018, he went to the Jewel store and ordered seafood at the meat counter. He brought an insulated black bag with him in order to prevent his items from spoiling. He continued shopping, returned to the counter to retrieve his order, and paid for his items at the front of the store. Tolston met Hamilton at the check-out line and asked, loudly, whether he paid for all of his items. This interaction "embarrassed" Hamilton.

¶ 8    On a later date, Hamilton called the Jewel store because he wanted to ensure that Tolston would not be present. Hamilton was transferred to the meat department and Tolston answered the phone. According to Hamilton, Tolston said, "I know who you are, n***, don't come back here to this store no more" and hung up the telephone.

¶ 9    On cross-examination, Hamilton acknowledged that he did not mention Tolston's alleged use of the N-word in (1) his July 2, 2018, complainant information sheet to the Department; (2) a

November 14, 2018, letter he sent to the Department; or (3) his December 5, 2018, charge of discrimination. Those documents, which were entered as exhibits and included in the record on appeal, do not mention the use of the N-word by Tolston.

¶ 10    Hamilton explained that he did not mention the N-word in those documents because he attempted to show respect to the Commission. He first mentioned Tolston's alleged use of the N-word after the Department dismissed the charge of discrimination. At that point, he "had to take the gloves off" and so he included it in his request for review.

¶ 11    The ALJ again asked if Hamilton had any witnesses to call. He responded that he did not have any witnesses, and explained that he "didn't understand" that he needed witnesses to testify or that the affidavits would not be entered into evidence. He stated that he would have made an effort to have the affiants appear and testify had he known.

¶ 12    Jewel called Tolston, who testified that he "never" told Hamilton to not return to the store and "never" called him the N-word. Tolston explained that when he answered Hamilton's telephone call, Tolston said, "hello, my name is Will. This is the meat department. How may I help you." Hamilton informed Tolston that he "got into it" with an employee and asked for the names of the employees who worked in Tolston's department during the prior two weeks. Hamilton also spoke about "racial profiling and how slaves were treated in the country." Hamilton then asked whether Tolston was the individual with whom he interacted, and Tolston confirmed that he was. Hamilton "kept going on" about "racial profiling." Tolston then ended the telephone call.

¶ 13    After the hearing, the ALJ ruled that Hamilton did not establish by a preponderance of the evidence race discrimination. The ALJ found that Hamilton was not credible regarding his accusation that Tolston called him the N-word and banned him from Jewel. Further, Hamilton

failed to mention Tolston's alleged use of the N-word in the initial allegations of race discrimination to the Department. The ALJ pointed to Hamilton's July 2018 complainant information sheet to the Department, his November 2018 letter to the Department, and his December 2018 charge of discrimination, none of which alleged that Tolston used the N-word.

¶ 14 The ALJ also noted that Hamilton first alleged that Tolston used the N-word in the request for review, after the Department dismissed the charge of discrimination. The ALJ explained that although Hamilton "has a historic empathy with the hateful word and understands past generational exclusions from properties," he "chose to remain silent about being the object of the most vile of terms and a prohibition, at a time when it was imperative to be thorough, forthright, and vocal— the recitation of allegations to agencies for drafting of the charge of discrimination." The ALJ explained that without the use of the N-word, Tolston's comments over the telephone may have been "rude and unnecessary," but even if believed, would not establish that Hamilton's ban from Jewel was based on race.

¶ 15 On June 23, 2023, the ALJ submitted his ROD finding that Hamilton did not establish by a preponderance of the evidence race discrimination by Jewel.

¶ 16 On July 19, 2023, Hamilton filed exceptions, arguing the ALJ erred by basing the entirety of his decision on whether he "believed Mr. Tolston called Mr. Hamilton the 'N-word.' " Hamilton attached two notarized affidavits and one document, which appears to be staff notes from the Department's investigation into his charge of discrimination. Hamilton contended that the affidavits and staff notes support that he mentioned Tolston's use of the N-word in the early stages of the Department's investigation and that he was called the N-word by Tolston.

¶ 17    The first affidavit, dated November 15, 2019, is signed by Kimberly Harmon. Harmon averred that she heard Hamilton call the Jewel store and ask whether " 'the butcher' " was working. Harmon averred that she heard Tolston say, " 'I know who you are N\*\*\*, don't come back up here to this store!' "

¶ 18    The second affidavit, dated November 18, 2019, is signed by Juliana Zaremba, who averred that she answered a telephone call from Hamilton on June 9, 2018. Hamilton told Zaremba that he called Jewel and spoke to a butcher. The butcher then told him, " 'I know who you are, (then the N word), don't come back up here to this store!' "

¶ 19    The Department's notes reflect that an investigator interviewed Zaremba in January 2020. Zaremba confirmed that Hamilton called her and informed her of a conversation he had with a Jewel employee.

¶ 20    Jewel responded to Hamilton's exceptions, contending that the affidavits should not be considered by the Commission because they were never admitted into evidence, constitute inadmissible hearsay, and regardless, do not undermine the ALJ's decision. Jewel argued that Hamilton was not credible and pointed to his failure to mention Tolston's alleged use of the N-word until after the Department dismissed his charge of discrimination.

¶ 21    On March 5, 2024, the Commission declined further review of Hamilton's case and adopted the ALJ's decision in full as the Commission's final order.

¶ 22    Hamilton timely sought direct review from this court and named Jewel, the Commission, and the Department as respondents. The Commission and the Department filed a joint brief in response. We granted Jewel's motion to join in the State respondents' brief.

¶ 23    On appeal, Hamilton challenges the Commission's determination that he did not present evidence of race discrimination.

¶ 24    An aggrieved party claiming a civil rights violation under the Act may file a charge with the Department, which will investigate the claim to determine whether a party's allegations of unlawful discrimination are supported by substantial evidence. 775 ILCS 5/7a-102(C)(1) (West 2018). If the Department determines that substantial evidence supports a claimant's allegations, it notifies the complainant that he may request the Department to file a complaint on his behalf with the Commission, as occurred here. *Id*. § 7a(D)(4) (West 2018).

¶ 25    After a complaint is filed with the Commission, a hearing date is set before an ALJ. 775 ILCS 5/8a-102(A) (West 2018); 56 Ill. Admin. Code 5300.520(a) (eff. June 1, 1996). At the hearing, the parties may examine and cross-examine witnesses and introduce other evidence subject to the Illinois rules of evidence for civil cases. 775 ILCS 5/8a-102(G)(1), (3) (West 2018); 56 Ill. Admin. Code 5300.750(b)(2) (eff. January 1, 1998). After a recommended order is filed with the Commission, any party may file "written exceptions" to the order. 775 ILCS 5/8a-103(A) (West 2018). Once a recommended order and written exceptions and responses are received by the Commission, it will determine whether to accept or decline a claimant's case for review. *Id*. § 5/8a-103(E)(1) (West 2018). If the Commission declines the case for review, the recommended order "shall become the order of the Commission." *Id*.

¶ 26    On direct appeal to this court from a final order of the Commission, "[w]e review the decision of the Commission, not the Department." *Alcequeire v. Human Rights Comm'n*, 292 Ill. App. 3d 515, 519 (1997). We may affirm the Commission's determination on any basis in the record. See *Boaden v. Department of Law Enforcement*, 267 Ill. App. 3d 645, 652 (1994)

("Because we review the order entered, not the reasoning underlying it, we may affirm the decision of an administrative agency when justified in law for any reason.").

¶ 27     Hamilton's first contention on appeal is that the ALJ and the Commission erred by refusing to review his submitted affidavits and notes from the Department's investigator.

¶ 28     Here, prior to the hearing, Hamilton and the ALJ engaged in a colloquy regarding the affidavits, where the ALJ explained that the affidavits would not be entered into evidence and that "live witnesses are obligated to appear and give their testimony." During his case-in-chief, Hamilton never sought to introduce the affidavits or the Department's notes into evidence. Before Hamilton closed his case-in-chief, the ALJ again asked if he had any witnesses to call and Hamilton said he did not. As Hamilton did not formally seek to admit the affidavits and notes into evidence, the ALJ properly disregarded them and the Commission's final order adopting that decision was appropriate.

¶ 29     To the extent the colloquies between the ALJ and Hamilton could be construed as a request by Hamilton to enter the affidavits into evidence, we observe that "[t]he testimony taken at the hearing is subject to the same rules of evidence that apply in courts of this State in civil cases." 775 ILCS 5/8A-102(G)(3) (West 2018). The Illinois Rules of Evidence, in turn, provide that hearsay, or an out-of-court statement offered for the truth of the matter asserted, is generally inadmissible unless an exception applies. Ill. Rs. Evid. 801(c) (eff. Oct. 15, 2015), 802 (eff. Jan. 1, 2011). The admission of evidence is reviewed for abuse of discretion, which is found only where no reasonable person would agree with the Commission's decision. *Critenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 59. Here, Hamilton proffered the affidavits for the truth of the matter asserted, namely, that Tolston used the N-Word. Consequently,

the ALJ did not abuse his discretion in advising Hamilton that the affidavits would not be considered. See, *e.g.*, *Kroot v. Chan*, 2019 IL App (1st) 181392, ¶ 22 (finding that "affidavits relied upon by the plaintiffs *** are out-of-court statements that the plaintiffs now rely upon to establish the truth of facts asserted therein" and "do not fall under any exception to the rule against hearsay").

¶ 30   Hamilton further contends the ALJ's failure to consider the affidavits caused the ALJ to find that Hamilton was not a credible witness, that Hamilton failed to mention Tolston's alleged use of the N-word prior to February 2020, and that Hamilton was not called the N-word by Tolston.

¶ 31   As noted, the Commission's final order adopted the ALJ's ROD. Credibility determinations made by the Commission are questions of fact. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of facts "shall be sustained" unless they are against the manifest weight of the evidence. 775 ILCS 8-111(B)(2) (West 2018); *Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶ 26. A finding of fact is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Windsor Clothing Store*, 2015 IL App (1st) 142999, ¶ 26. We cannot substitute our own judgment for that of the Commission or reweigh the evidence presented to the Commission. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 494 (2006). "If the record contains any evidence supporting the Commission's decision, we must sustain the decision on review." *Sangamon County Sheriff's Department. v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 142 (2009).

¶ 32   The ALJ noted that Hamilton first alleged that Tolston used the N-word when Hamilton filed his request for review to the Commission. The ALJ found Hamilton was not a credible witness because he failed to mention the use of the N-word at the most critical time, *i.e.*, when he filed his

charge of discrimination with the Department. Reading the ALJ's findings in context, it is apparent that the ALJ based his credibility determination on Hamilton's failure to allege Tolston's use of the N-word when Hamilton filed his charge of discrimination, and not because the affidavits were not entered into evidence. Accordingly, we find the Commission's final order, which adopted the ROD, was not against the manifest weight of the evidence. *Id.*

¶ 33    Affirmed.