# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Jones v. Lockard*, 2011 IL App (3d) 100535

---

| | |
|---|---|
| Appellate Court Caption | KEITH JONES, Petitioner, v. CHERYL LOCKARD, THE HUMAN RIGHTS COMMISSION, and THE DEPARTMENT OF HUMAN RIGHTS, Respondents.–FIRST BAPTIST CHURCH, Petitioner, v. CHERYL LOCKARD, THE HUMAN RIGHTS COMMISSION, and THE DEPARTMENT OF HUMAN RIGHTS, Respondents. |
| District & No. | Third District<br>Docket Nos. 3-10-0535, 3-10-0536 cons. |
| Filed | September 8, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for sexual harassment and retaliatory discharge, the Human Rights Commission's findings that a massage that occurred within the 180-day filing deadline was not qualitatively different from petitioner's conduct that occurred outside the deadline and that the massage contributed to the hostile work environment created by petitioner's unwanted sexual conduct was not against the manifest weight of the evidence; further, there was no clear error in the finding that respondent's allegations were timely filed, and the award of attorney fees was affirmed. |
| Decision Under Review | Petition for review of order of Illinois Human Rights Commission, Nos. 2004SN3085, 2004SN3084 cons. |
| Judgment | Affirmed. |

| Counsel on Appeal | L. Lee Smith and Garth C.K. Madison (argued), both of Hinshaw & Culbertson LLP, of Peoria, for petitioner. |

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary E. Welsh (argued), Assistant Attorney General, of counsel), for respondent Illinois Human Rights Commission.

M. Michael Waters (argued), of Vonachen, Lawless, Trager & Slevin, of Peoria, for respondent Cheryl Lockard.

Panel    JUSTICE McDADE delivered the judgment of the court, with opinion. Justices Holdridge and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1    On April 20, 2004, respondent Cheryl Lockard filed a charge with the Illinois Department of Human Rights (Department) of sexual harassment and retaliatory discharge against Keith Jones and First Baptist Church, respectively (petitioners). Lockard's charge alleged that Jones sexually harassed her between August 2000 and April 7, 2004, by *inter alia*, making sexually suggestive comments and innuendo, and suggesting she wear miniskirts to work. The initial charge also alleged that the church discharged her in retaliation for her complaints of sexual harassment by Jones. The Department found that substantial evidence existed to support Lockard's claims and filed complaints against Jones (case No. 3-10-5036) and the church (case No. 3-10-0536) with the Illinois Human Rights Commission (Commission).

¶ 2                              BACKGROUND
¶ 3    The complaint to the Commission alleged four incidents of sexual harassment in 2003 and one in 2004, including that:

(1) Jones told Lockard that the dress code required her to wear miniskirts;

(2) Jones told Lockard God would not permit him to have an affair with any of the beautiful women he worked with;

(3) Jones made a sexual reference about a local man;

(4) Jones discussed extramarital affairs with Lockard;

(5) Jones massaged Lockard's shoulders without her permission in November 2004.

¶ 4    The complaint to the Commission also alleged that Jones was a member of the church's management, he sexually harassed Lockard, and that an *ad hoc* committee formed by the

-2-

church to investigate Lockard's complaints of sexual harassment told Lockard she would likely lose her job if she continued to oppose Jones's sexual harassment. The complaint alleged it did ultimately discharge her for that reason. In August 2007 the Commission conducted a hearing on the charge before an administrative law judge (ALJ).

¶ 5    The church hired Lockard as its treasurer in January 2000. Jones became the church's pastor in August 2000 and was Lockard's supervisor. The hearing adduced evidence of comments concerning extramarital affairs in January 2001, that Jones asked Lockard to view a sexually explicit picture on his computer in September 2001, and that Jones made the comment concerning the office dress code in 2002. The ALJ heard testimony concerning references to oral sex that Jones made to another employee in spring 2001 and again in summer 2003. There was also testimony that Jones made other anatomical sexual references in the office.

¶ 6    In August 2003 Lockard complained to the church's board chairman, Brad Anderson, about Jones. Lockard specifically complained to Anderson about Jones's inappropriate jokes. Anderson confronted Jones. Jones denied making requests for oral sex but admitted that a casual atmosphere existed in the office. The hearing produced evidence that, after Lockard's complaint and Anderson's confronting of Jones in September 2003, Jones made a sexual reference about a member of the community. Then, in October 2003, he made a sexual innuendo with regard to a photograph of a man and a horse, made comments regarding extramarital affairs to Lockard, and displayed a sexually suggestive photograph on another employee's computer. Later in October 2003, another female employee submitted her resignation, and she and Lockard again met with Anderson. Both women informed Anderson that the office environment had not improved since Anderson spoke to Jones. They described Jones's sexual comments and requests for oral sex.

¶ 7    On November 4, 2003, Lockard was working at her desk and Jones began to rub her shoulders. She shrugged to remove Jones's hand and he stopped. Later in November, during its meeting, the church's pastoral relations committee discussed Jones's behavior. A church member informed the committee that the female employee who resigned did so because of Jones's sexual harassment. The committee discussed the casual atmosphere in the office. The meeting concluded with an admonishment to Jones that the casual atmosphere in the office had to stop. In January 2004, Barb Grant became chair of the church's board. She was informed of the aforementioned committee meeting and the prior complaints. Grant approached Lockard and asked whether Jones had shown any anger or engaged in any sexual harassment toward her. Lockard responded that no sexual harassment had occurred since the November 2003 pastoral committee meeting.

¶ 8    On April 7, 2004, Jones was present at a test of the church's new sound system. Jones wore a wireless microphone and told another member to speak into his cheek. Lockard interpreted the comments as referencing rubbing the other member's buttocks cheek. Lockard reported the incident to Grant and repeated her allegations of Jones's requests for oral sex and for an extramarital affair. Grant investigated the allegations but told Lockard that she could not find anyone to corroborate them. Grant met with the office staff and they discussed all of the allegations. Lockard explained that Jones's "cheeks" remark made her uncomfortable. Jones responded that she had misunderstood him. At the conclusion of that

-3-

meeting, Jones informed Lockard that her job was not in jeopardy but would be if she did not bring any future concerns to him first.

¶ 9    On April 15, 2004, the church's board formed an *ad hoc* committee to investigate the complaints against Jones. There was testimony at the hearing before the ALJ that Jones made offensive or inappropriate remarks once or twice a week. There was also testimony that the committee met with Lockard. Lockard described the work environment, including Jones's temper, to the committee. She did not describe requests for oral sex during that meeting (because she felt she was not given an opportunity to do so). Grant asked Lockard if she could continue to work if Jones's conduct did not change. Grant rephrased the question to ask whether Lockard could work in what she perceived to be a sexually harassing and hostile environment. Lockard replied she did not know.

¶ 10    On April 20, 2004, the committee met. Grant did not report to the committee another former employee's statement to her in the course of her own investigation that Jones had requested oral sex from her and Lockard. That employee, Sue Weaver, resigned in September 2001. Grant reported only that Weaver had found some of Jones's jokes to be inappropriate. The committee decided that Lockard had a malicious intent to undermine Jones and to make false statements. The committee recommended discharging Lockard. At a full meeting of the board, Grant again reported that she could only corroborate that Jones had made some inappropriate comments but not the cheek incident or Jones's temper. Jones stated that Lockard was not cooperative and that he could not get along with her. The board discussed Lockard's intent and concluded that Jones needed to be able to work in an environment where he could trust the staff. The board voted to discharge Lockard and informed her the following day. The board read Lockard a statement which characterized her complaints against Jones as false and destructive.

¶ 11    In September 2009, the ALJ found that certain events had occurred between January 2001 and October 2003, that in October 2003 Lockard had informed her employer about some of those events, and that the employer took certain actions. The ALJ found that additional events occurred after the employer took those actions, in November 2003 and on April 7, 2004. The ALJ specifically found, with regard to the timeliness of Lockard's allegations, that the November 2003 shoulder massage qualified as sexual harassment and that it occurred within the same period that Jones had subjected Lockard to a series of sexually tinged comments and photographs that were demeaning to women. Thus the ALJ found that the massage and Jones's conduct outside the 180-day filing window for complaints of sexual harassment were not qualitatively different. The ALJ also found in Lockard's favor on her complaint for retaliation. The ALJ noted that Lockard complained to the former board chair about Jones's behavior in August 2003 and October 2003 and asked the new board chair to investigate. However, the new board chair failed to report allegations of requests for oral sex from two former employees.

¶ 12    The ALJ issued a recommended decision and order recommending that petitioners be found liable on both charges and that Lockard be awarded damages. Lockard filed a motion for attorney fees and costs. The ALJ also recommended awarding Lockard attorney fees and costs. Petitioners filed exceptions with the Illinois Human Rights Commission (Commission). In May 2010, the Commission declined further review and entered a final

-4-

order adopting the ALJ's recommended decision and order.

¶ 13    This appeal followed.


¶ 14                                ANALYSIS

¶ 15    The dispositive statutory provision is section 7A-102(A)(1) of the Illinois Human Rights Act (Act) (775 ILCS 5/7A-102(A)(1) (West 2004)). Section 7A-102(A)(1) provides:

> "Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director." 775 ILCS 5/7A-102(A)(1) (West 2004).

¶ 16    But the first issue we must address is the appropriate standard of review. In *Gusciara v. Lustig*, 346 Ill. App. 3d 1012, 1017-18 (2004), while addressing the timeliness of a complaint pursuant to section 7A-102(A)(1) of the Act, the court held that "to the extent that our review hinges on the interpretation of the Act, it raises a question of law that we review *de novo*." We find that the appropriate standard of review is for clear error of the Commission's orders, which involved mixed questions of law and fact. *520 South Michigan Avenue Associates v. Department of Employment Security*, 404 Ill. App. 3d 304, 313 (2010) (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008)). The *de novo* review in *Gusciara* went only to the construction of the statute and whether it contained an exception to the 180-day jurisdictional deadline for "related" allegations. *Gusciara*, 346 Ill. App. 3d at 1018. The *Gusciara* court then applied the appropriate construction of the statute to the facts as found by the Commission. *Gusciara*, 346 Ill. App. 3d at 1021.

¶ 17    In this case, clear error review is appropriate because whether a series of acts cumulatively contributed to a hostile work environment is a question of fact reviewed under the manifest weight of the evidence standard. See *Sangamon County Sheriff's Department v. Illinois Human Rights Comm'n*, 233 Ill. 2d 125, 143 (2009) ("The Commission's finding that Yanor committed a variety of sexually harassing acts that cumulatively constituted a hostile work environment was not against the manifest weight of the evidence."). At the same time, that factual determination must be applied under the interpretation of the statute which holds that "a charge is timely as long as it is filed within 180 days of any act that is part of the hostile work environment." *Sangamon County Sheriff's Department*, 233 Ill. 2d at 142.

¶ 18    With the appropriate standard of review in mind, we next turn to petitioners' sole argument on appeal: that Lockard's charge of discrimination was not timely filed. The earliest date for considering whether acts lead to a hostile work environment was October 23, 2003.

> "[T]he Illinois [Human Rights] Act is governed by the *Morgan* rule. [*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).] It held that a charge of sexual harassment based on a hostile work environment is timely as long as any of the acts that contributed to the hostile environment occurred no more than 180 days before the claimant filed her charge." *Jenkins v. Lustig*, 354 Ill. App. 3d 193, 196 (2004).

Petitioners concede that the acts leading up to the shoulder massage would state a claim of a hostile work environment, but argue that all of those acts occurred outside the 180-day window that the work environment was actionable, based on Lockard's filing date.

"The 180-day filing requirement is mandatory in order to vest the Commission with subject matter jurisdiction of the charge. [Citations.] ***

A sexual harassment claim based on a hostile work environment generally is made up of a series of events rather than a single event. *** Provided that an act contributing to the claim occurs within 180 days of the filing date, a fact finder may consider all of the conduct that makes up the hostile environment claim. [Citation.]" *Sangamon County Sheriff's Department*, 233 Ill. 2d at 141.

¶ 19 According to petitioners, the Commission's findings of fact left the incident where Jones rubbed Lockard's shoulders as "the one possible act of harassment within the 180-day period." However, petitioners argue that the shoulder rub is not related to the prior allegations and is the only act to have occurred within the 180-day period and, therefore, Lockard's complaint of a hostile work environment based on those prior acts was not timely. Alternatively, petitioners assert that Lockard's complaint was not timely filed because the only two acts that occurred less than 180 days before she filed the charge with the Department occurred *after* certain intervening action by the employer and, therefore, are not components of the actionable hostile environment that may have existed *before* the intervention.

¶ 20 In *Jenkins*, the court held that the *Morgan* rule applies "unless (1) the acts within the jurisdictional period have no relation to those outside the period or (2) are no longer part of the same hostile environment claim. [Citation.]" *Jenkins*, 354 Ill. App. 3d at 196. In support of their argument that the shoulder rub had no relation to the prior acts, petitioners argue that the cessation of the allegedly harassing conduct, ending in a single, isolated event, broke the chain of discrete discriminatory events that formed a single campaign of discrimination and prevents the use of the "continuing violation" theory to save Lockard's complaint based on conduct occurring outside the filing period. See *Fitzgerald v. Henderson*, 251 F.3d 345, 364-65 (2d Cir. 2001).

¶ 21 Lockard, the Commission, and the Department (respondents) agree that the Commission found that the November 2003 shoulder massage was the only possible act of sexual harassment that clearly occurred within the 180-day period, but argue that the Commission correctly found that the massage was the last in a series of acts that, together, created a hostile work environment. Initially, however, the state respondents question whether the "relation exception" to the *Morgan* rule applies in Illinois.

¶ 22 SCOPE OF *MORGAN* RULE

¶ 23 Respondents concede that *Gusciara* adopted the exception to the *Morgan* rule, which provides that an act within the 180-day period will not save an untimely claim of a hostile work environment based on a series of acts extending outside the 180-day period, if the timely act is not related to the acts occurring outside the filing window. They note, however, that when our supreme court similarly held that a charge is timely so long as it is filed within

180 days of any act that is part of the hostile work environment, our supreme court cited *Gusciara* but did not expressly mention or adopt *Morgan*'s exceptions for "unrelatedness" or intervening employer actions. See *Sangamon County Sheriff's Department*, 233 Ill. 2d at 142. Respondents argue that to construe the *Morgan* rule to include the "no relation" and "intervening action" exceptions would be inconsistent with the rule requiring liberal construction of the Act to achieve its goals.

¶ 24    We find that both exceptions to the *Morgan* rule apply. This court has expressly found that the exceptions apply. *Jenkins*, 354 Ill. App. 3d at 196. The supreme court's silence on the specific and narrow exceptions to the *Morgan* rule is insufficient to overcome our courts' express adoption of the *Morgan* rule without modification or limitation. See *Gusciara*, 346 Ill. App. 3d at 1019-20 ("We hold that, with one exception to be noted, *Morgan*'s construction of Title VII's limitations provision applies to the interpretation of section 7A-102(A)(1) of the Act.")[1].

¶ 25                                RELATED CONDUCT

¶ 26    Returning to the question of whether the shoulder rub had "no relation" to the prior acts, petitioners argue that the shoulder rub was an isolated example of nonsexual physical conduct that is distinct from the series of "sexually tinged comments and photographs" that the Commission found created the hostile work environment. Further, petitioners argue, even if the shoulder massage was sexual in nature, the shoulder rub was of a different character than the prior acts.

¶ 27    Lockard responds the timeliness of the charge hinges on the Commission's *factual* determination that the massage incident *was* part of her sexual harassment claim. Lockard suggests this court must give deference to that finding of fact by the Commission, and she argues that finding must be affirmed unless it is contrary to the manifest weight of the evidence. Thus, all of the prior conduct may be considered because the massage incident occurred within the 180-day period and it was part of the same hostile environment created by Jones's earlier conduct. Lockard relies on the Commission's determination that the massage was not qualitatively different to support the proposition that the massage incident was, independently, sexual in nature, and, for timeliness purposes, was "an act contributing to the *** hostile environment." *Morgan*, 536 U.S. at 117.

¶ 28    The Commission's finding that the shoulder massage was related to the acts occurring outside the 180-day filing period, and thus was an act contributing to and part of Lockard's claim of a hostile work environment based on Jones's acts occurring outside the 180-day

---

[1]The *one* exception to the court's full adoption of the *Morgan* rule, including its exceptions, was as follows:

"We do diverge from *Morgan* in one important respect. The Supreme Court held that because Title VII's limitations provision is not jurisdictional, it is subject to equitable doctrines such as waiver, estoppel, and tolling. [Citation.] Because section 7A-102(A)(1)'s time limit is jurisdictional, we do not incorporate such equitable defenses into section 7A-102(A)(1)." *Gusciara*, 346 Ill. App. 3d at 1020.

filing period, is not against the manifest weight of the evidence. Based on that finding, we hold that Lockard's complaint was timely.

¶ 29    As grounds for our decision we first note that the Act does not distinguish different "types" of acts, be they verbal, visual, or physical, to determine whether harassment has occurred. Stated differently, whether the act that causes the harassment is physical or not is irrelevant. The Act broadly defines "sexual harassment" as "*any* conduct of a sexual nature [that] *** has the purpose *or* effect of substantially interfering with an individual's work performance." (Emphases added.) 775 ILCS 5/2-101(E) (West 2004). We also find that the change in Jones's conduct from verbal to physical is not relevant to the determination of whether his conduct within the 180-day period is "related," for *Morgan* purposes, to his conduct outside the 180-day period.

¶ 30    Lockard correctly argues that *Sangamon County Sheriff's Department* does not support the proposition that a single act of a different character from earlier acts can not be considered part of the same hostile environment created by the earlier acts, and in fact stands for the contrary proposition. Under *Sangamon County Sheriff's Department*, the alleged "character" of the prior acts is not determinative of whether an act occurring within the filing period bears "no relation" to acts occurring outside the filing period and contributed to the same hostile work environment.

¶ 31    In *Sangamon County Sheriff's Department*, the act occurring within the filing period was a letter which, the court found, "communicated a humiliating and false allegation of a sexual nature." *Sangamon County Sheriff's Department*, 233 Ill. 2d at 143. The acts occurring outside the filing period included physical confrontations and verbal requests for sexual favors. See *Sangamon County Sheriff's Department*, 233 Ill. 2d at 134-35. Our supreme court held that "[t]he Commission's finding that [respondent] committed a *variety* of sexually harassing acts that cumulatively constituted a hostile work environment was not against the manifest weight of the evidence." (Emphasis added.) *Sangamon County Sheriff's Department*, 233 Ill. 2d at 143.

¶ 32    Lockard also argued that the massage incident was an act contributing to the hostile environment where she continued to work at the same location under the same supervisor who engaged in all of the harassing conduct. We agree. The court has specifically looked to the "offensive conduct, office, and perpetrator [of] the incidents that occurred within the 180-day time period" (*Jenkins*, 354 Ill. App. 3d at 197) to determine whether conduct outside that period contributed to the same hostile environment (*id.*). The court held that the "timely" act by the same perpetrator in the same office was part of the claim based on earlier acts by the same perpetrator in the same office. *Jenkins*, 354 Ill. App. 3d at 197.

¶ 33    In *Jenkins*, the court wrote:

"Although Jenkins did not provide specific dates on which the pre-limitations incidents occurred, the allegations indicated the same offensive conduct, office, and perpetrator as the incidents that occurred within the 180-day time period. A fact finder could easily conclude that this conduct was part of the same actionable hostile environment claim. [Citation.] Accordingly, it was an abuse of discretion to dismiss that portion of Jenkins' charge." *Jenkins*, 354 Ill. App. 3d at 197 (citing *Gusciara*, 346 Ill. App. 3d at 1021-22).

¶ 34                                    EMPLOYER INTERVENTION

¶ 35        Alternatively, petitioners argue that the Commission erroneously failed to consider the employer's intervention to determine whether any of the subsequent acts were related to the prior acts, choosing instead to assume a continuum of conduct based on proximity in time. Petitioners argue that because all of the acts alleged to have occurred within the 180-day period occurred after the employer's intervention in November 2003, none of those acts may be considered part of any allegations of an unlawful employment practice that may have resulted from acts that occurred prior to the employer's intervention. Petitioners argue that the church's intervening actions on October 29 and in November 2003 interrupted the hostile environment and broke any connection to the earlier conduct.

¶ 36        Lockard first questions whether the intervening action exclusion to the *Morgan* rule applies, where no Illinois court has expressly adopted it and its inclusion in the Act would not be consistent with a liberal interpretation of the Act to achieve its purpose of preventing sexual harassment. For the reasons discussed above, we hold that, to the extent the *Morgan* rule incorporates an exclusion to application of the rule when the timely act occurs after intervention by the employer, the exclusion applies in Illinois. Illinois has recognized:

> "The [*Morgan*] Court qualified [its] holding by specifying that an act that occurs within the prescribed period will not enable an employee to recover for acts occurring outside the period if the later act 'had no relation to the [earlier] acts' or if, 'for some other reason, such as certain intervening action by the employer,' the more recent act was 'no longer part of the same hostile environment claim.' [Citation.]" *Gusciara*, 346 Ill. App. 3d at 1019 (citing *Morgan*, 536 U.S. at 118).

¶ 37        The *Gusciara* court found as follows:

> "Were there some compelling reason to interpret the Act inconsistently with the federal courts' construction of Title VII, we might do so. However, just as the Supreme Court saw no compelling need ***, neither do we.
>
>     We hold that, with one exception [not applicable here], *Morgan*'s construction of Title VII's limitations provision applies to the interpretation of section 7A-102(A)(1) of the Act. Thus, a charge of sexual harassment based on a hostile work environment is timely as long as any of the acts that contributed to the hostile environment occurred no more than 180 days before the claimant filed her charge unless (1) the acts within the jurisdictional period had no relation to those outside the period; or (2) for some other reason, the later act was no longer part of the same hostile environment claim." *Gusciara*, 346 Ill. App. 3d at 1019.

¶ 38        Nonetheless, the employer's intervention in this case did not create a break in the series of events creating a hostile working environment for Lockard. See *Sangamon County Sheriff's Department*, 233 Ill. 2d at 141. Lockard points this court to *Williams v. City of Chicago*, 325 F. Supp. 2d 867, 874-75 (N.D. Ill. 2004), for the proposition that only an action that actually results in a significant change in working conditions will be considered an "intervening action" for purposes of the exclusion to the *Morgan* rule. We have held that "Illinois courts ought to construe the Act, including section 7A-102(A)(1), in harmony with

the federal courts' construction of Title VII." *Gusciara*, 346 Ill. App. 3d at 1019 (citing *Graves v. Chief Legal Counsel of the Department of Human Rights*, 327 Ill. App. 3d 293, 297 (2002) ("Illinois courts have looked to federal decisions involving Title VII of the Civil Rights Act of 1964 [citation] in evaluating the merits of discrimination claims under the Act.")).

¶ 39   In *Williams*, the court recognized that "[a]n 'intervening action' by an employer *** can break the relation between time-barred and timely acts. [Citation.]" *Williams*, 325 F. Supp. 2d at 874. There, the employer, relying on a previous federal decision, argued that its transfer of the employee from one work team to a different work team was a "*Morgan* 'intervening action.' " *Williams*, 325 F. Supp. 2d at 875. The court distinguished the previous decision on the grounds that, in the prior case, the court had found that "the plaintiff's transfer 'clearly changed' [the employee's] working conditions and that the time-barred acts had no relation to the timely acts. [Citation.]" *Williams*, 325 F. Supp. 2d at 875.

¶ 40   Following the federal court's earlier decision, the *Williams* court found the City of Chicago's transfer was not a "*Morgan* 'intervening action' " because the transfer "did not significantly change [the] working conditions." *Id.* The court noted that the harassing conduct that occurred before and after the transfer was related. *Id.* The *Williams* court held, "[a]ccordingly, [that] the time-barred acts [were] sufficiently related to the timely acts to preclude [the] transfer *** from being a *Morgan* 'intervening action.' " *Williams*, 325 F. Supp. 2d at 875.

¶ 41   The federal court decisions teach us that the action by the employer must significantly change the working conditions complained of to constitute a "*Morgan* 'intervening action' " and that the determination of whether there has been a significant change rests on the factual question of whether any subsequent acts are related to earlier acts. As discussed above, Illinois has held that the question of whether subsequent acts are related to earlier acts depends not only on the nature of the offensive conduct, but also on whether they are perpetrated in the same office, and by the same perpetrator. *Jenkins*, 354 Ill. App. 3d at 197. Thus, under *Williams* and *Jenkins*, we find that any alleged "intervening action" which does not remove an employee from the complained-of workplace, nor changes the employment relationship between the employees involved in the hostile working environment, does not constitute a "*Morgan* 'intervening action' " such that the employer's "intervention" creates a break between the previous conduct and the subsequent conduct.

¶ 42   Applying those standards to the facts here, we find that the shoulder massage contributed to the hostile environment because it involved an unwanted touching during a time when Jones had subjected Lockard to a series of sexually tinged comments and photographs that were demeaning to women. That is, the conduct was perpetrated by the same person in the same workplace as the previous conduct.

¶ 43   There is no dispute that the previous conduct was sufficient to support Lockard's complaint of a hostile work environment. The Commission's finding that the massage, which occurred within the 180-day filing deadline, contributed to Lockard's hostile work environment created by Jones's series of acts of unwanted sexual conduct is not against the manifest weight of the evidence. For all of the foregoing reasons, we can find no clear error

in the finding that all of the allegations in the complaint were timely filed.

¶ 44                                            ATTORNEY FEES

¶ 45      Next, petitioners argue that the Commission erroneously adopted a rule whereby the "prevailing community rate" used to determine the hourly rate for an award of attorney fees can be different based on whether the attorney is representing employees or employers. The Commission accepted Lockard's attorney's evidence as to his rate as the prevailing rate upon which to base the attorney fee award.

> "It is well established that it is within the discretion of the trier of fact to determine the reasonableness of the attorney fees requested, and a court of review should not make a *de novo* decision as to the appropriate award of attorney fees." *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 494 (1996).

"[W]e review the decision to award attorney fees under an abuse of discretion standard." *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007).

¶ 46      We affirm the Commission's award of attorney fees. The Commission did not base its award on the nature of the client, although such consideration is not wholly inappropriate. See *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 743 (7th Cir. 2003) ("Fee-shifting statutes in civil rights legislation are intended to allow litigants access to attorneys who would otherwise be inaccessible, given the low retainers many plaintiffs can afford." (citing *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986))). Regardless, respondents correctly argue that petitioners' affidavits (two of three of which came from their own attorneys and only represented the hourly rate charged to petitioners) are not sufficient to rebut evidence of Lockard's attorney's actual hourly rate (when the case began), which is presumptive evidence of the appropriate market rate. *Mathur*, 317 F.3d at 743 ("[t]he attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate" (internal quotation marks omitted)).

¶ 47      Petitioners' arguments do not dispute the existence of evidence to support the Commission's exercise of its discretion to determine the appropriate attorney fee award. Petitioners expressly asked this court to use the rate *their* attorney charged as the prevailing community rate and to lower the award of attorney fees accordingly. Petitioners' arguments amount to no more than a request to weigh that evidence differently and to make a new determination of the appropriate level of fees. This court may not engage in such an exercise.

> "It is well established that it is within the discretion of the trier of fact to determine the reasonableness of the attorney fees requested, and a court of review should not make a *de novo* decision as to the appropriate award of attorney fees." *Raintree Health Care Center*, 173 Ill. 2d at 494.

In this case, the Commission's award is supported by competent evidence of the prevailing community rate. The fact that petitioners would have considered other evidence, or would have weighed the evidence differently, does not demonstrate error in the Commission's award.

¶ 48                                  CONCLUSION

¶ 49          The order of the Illinois Human Rights Commission is affirmed.

¶ 50          Affirmed.