No. 2-24-0303
Opinion filed July 31, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF BRITT SPANGLER f/k/a DeFauw, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 09-D-320 |
| NATHAN DeFAUW, | ) ) ) | Honorable Sarah Gallagher Chami, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1   Twelve years after her marriage to respondent, Nathan DeFauw, was dissolved, petitioner, Britt Spangler, filed a petition for a rule to show cause as to why Nathan should not be held in contempt for failing to pay child support. Following a hearing, the circuit court of De Kalb County found Nathan in civil contempt for his failure to pay child support and determined that his child support arrearage was $78,885.64. The trial court ordered Nathan to pay that amount, as well as Britt's attorney fees. Nathan appeals. For the following reasons, we affirm.

¶ 2                          I. BACKGROUND

¶ 3   The parties were married on April 12, 2003. Two children were born to the marriage: A.M. on March 24, 2005, and J.C. on June 4, 2007. The parties' marriage was dissolved on March 25,

2010. The judgment of dissolution incorporated the parties' joint parenting agreement (JPA). That agreement stated in relevant part:

"ARTICLE II

CHILD SUPPORT AND DEPENDENCY EXEMPTION

1.      NATHAN shall pay directly to BRITT, the first of each month the sum of seven hundred dollars ($700.00) monthly, as and for the support of the parties' two minor children *** which represents twenty [sic] percent (28%) of NATHAN'S current net income, from all sources[.]

2.      BRITT and NATHAN acknowledge and agree that NATHAN shall provide BRITT with true and complete copies of his paychecks, earning statements, W-2 or 1099 forms, etc[.], on a yearly basis on or before February 1 of each year, and in the event that NATHAN earns additional income herein, he shall provide to BRITT his child support calculations and his additional child support payments.

* * *

5.      BRITT and NATHAN, mutually covenant and agree that they shall file a joint tax return for the 2009 tax year, splitting any refund, fifty-fifty (50/50). Thus, the parties agree that commencing with the 2010 tax year, and for all subsequent even tax years, BRITT shall have the right to claim the parties' minor children as an exemption for purposes of her individual Federal and State Individual Income Tax returns, and NATHAN shall have the right to claim the parties' minor children, as an exemption for purposes of his individual Federal and State Individual Income Tax returns commencing with tax year 2011, and as a dependent in all subsequent odd tax years. The parties further agree that the

alternating tax benefit is conditioned on the fact that NATHAN is current with all of his child support obligations on December 31 of each year.

\* \* \*

ARTICLE IX

DISPUTE RESOLUTION

1. In the event either BRITT or NATHAN wishes to modify this Agreement, then he or she shall submit a letter describing the proposed changes to the other party. Any such proposed changes shall not become effective unless and until the other party consents to said changes in writing.

2. If either BRITT or NATHAN wishes to change the terms of this Agreement in a manner to which the other party does not agree, or if any dispute arises about the meaning of this Agreement or anything else concerning the parties minor children, then BRITT or NATHAN shall attempt to resolve their disputes informally, thereby avoiding the expense and acrimony of formal court proceedings."

¶ 4 Over the next several years, Nathan paid Britt $700 a month for child support. In late 2015, Britt asked Nathan to increase his child support payments to $900 a month, and he agreed. In June 2021, Britt asked Nathan for an additional $70 a month, and he agreed to pay that. In June 2022, he increased his monthly payment by another $72 at Britt's request. From the time of the dissolution in 2010 through 2021, Nathan did not provide Britt with his income statements or tax forms, and she did not ask him for them. He also received the tax benefits as described in the parties' JPA during those years, as Britt did not assert that he was behind in his child support obligations.

¶ 5       On December 13, 2021, Nathan filed a petition for rule to show cause as to why Britt should not be held in indirect civil contempt for her willful refusal to tender the parties' younger child for parenting time.

¶ 6       On January 19, 2022, Britt filed a petition for rule to show cause, alleging that Nathan had not paid child support as required by the parties' JPA. The petition alleged that Nathan's "refusal to provide his financial documents timely, nor calculations and additional support payments, has resulted in [Nathan] having paid the same amount in child support for the better part of twelve and a half years with little or no increase, albeit [his] income has increased." The petition requested that Nathan provide all additional support to her as required by the JPA. The petition also sought the legal fees and costs she incurred in bringing the petition.

¶ 7       On July 21, 2022, the trial court entered an agreed order resolving the issue of Nathan's visitation with the parties' youngest child.

¶ 8       On April 11, 2023, Nathan filed a motion to modify child support based on the income sharing formula. He also asserted that there had been a substantial change in circumstances warranting the modification of child support; specifically, the parties' elder child would be graduating high school in May 2023.

¶ 9       On July 28, 2023, Nathan filed a petition for a rule to show cause due to Britt's failure to provide her financial information.

¶ 10      On November 1, 2023, and January 17, 2024, the trial court conducted a hearing on the parties' petitions for rules to show cause. Britt testified that the JPA required Nathan to pay 28% of his income in child support for the parties' two children. Britt acknowledged that she asked Nathan in 2015 to increase his child support payment to $900 per month, and he did so. Britt testified that after the 2010 dissolution, Nathan had not provided her with his financial income

documents until 2021. Britt stated that she believed Nathan was "acting in good faith" and it was her understanding that there had not been any increase to his income. After receiving that information, she noted that Nathan's income had increased on an annual basis.

¶ 11    Nathan testified that he understood the child support provision of the JPA to mean that he only had to pay additional child support in the event he earned additional income, such as from a second job. He also explained that the JPA only required him to provide his earning statements to Britt if he was earning additional income from a second job. He stated that he had taken a tax exemption on one of the children every year. He testified that he had never intentionally disobeyed the parties' JPA.

¶ 12    At the close of Britt's case-in-chief, Nathan moved for a directed verdict. The trial court denied that motion, finding that the language of the JPA was unambiguous and that Nathan's defense was self-serving and unreasonable.

¶ 13    On March 6, 2024, the trial court ruled on the petitions for rules to show cause. The trial court found that the child support arrearage that Nathan owed from January 2015 through 2023 was $78,885.64. The trial court granted Nathan's petition to modify child support as of April 2023 and lowered his obligation to $773.12 per month. The trial court stated that this modification was already reflected in the arrearage that Nathan owed. The trial court found Nathan in civil contempt for his failure to pay child support and set a purge amount of $7,500 to be paid within 30 days. The trial court ordered that a payment plan be established within 30 days, and if it was not, it could order Nathan to be held in the De Kalb County jail for a period not to exceed six months.

¶ 14    On April 2, 2024, Nathan filed a motion to reconsider. He argued that the trial court erred when it determined that the JPA had not been modified by a verbal agreement. He further argued that the trial court erred when it denied his claim of equitable estoppel.

¶ 15    On April 9, 2024, Britt filed a petition for attorney fees and costs.

¶ 16    On April 10, 2024, the trial court denied Nathan's motion to reconsider. The trial court further ordered that Nathan pay Britt an additional $150 per month that would be applied to his child support arrearage.

¶ 17    On July 31, 2024, following a hearing, the trial court granted Britt's petition for attorney fees and costs and awarded her $33,946.32. Nathan thereafter filed a timely notice of appeal.

¶ 18                                          II. ANALYSIS

¶ 19    On appeal, Nathan argues that the trial court erred in determining that he owed a child support arrearage. He first contends that the JPA was ambiguous, and it should be interpreted the way the parties did—that being, he did not have to pay additional child support unless he obtained a second job. In making this argument, Nathan relies on *Schneider v. Neubert*, 308 Ill. 40, 43 (1923), which states:

> "Courts have a right to assume that the parties know best what they meant, and if, in reducing their agreement to writing, words or terms have been used that render the contract ambiguous or uncertain, the construction by the parties thereto, as shown by their acts thereunder, cannot help but be of value in ascertaining the true intent and meaning of such contract."

¶ 20    *Schneider* sets forth how to interpret an ambiguous contract. A contract is ambiguous where the language employed is susceptible to more than one reasonable meaning or obscure in meaning through indefiniteness of expression. *Meyer v. Marilyn Miglin, Inc.*, 273 Ill. App. 3d 882, 888 (1995). Whether a contract is ambiguous or clear is a question of law. *Countryman v. Industrial Comm'n*, 292 Ill. App. 3d 738, 740-41 (1997). Where the contract is clear, its

interpretation is to be determined only from the terms of the contract itself. *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

¶ 21 Here, the child support provision of the JPA was not ambiguous. That provision required Nathan to provide Britt with his earning statements on an annual basis and to provide updated child support calculations based on his additional earned income. That provision is clear and did not suggest it was contingent upon Nathan earning income from a second job.

¶ 22 Nathan next argues that the trial court erred in not finding that the parties had orally modified the JPA. In fact, a JPA is a written contract (*In re Marriage of Coulter*, 2012 IL 113474, ¶¶ 19, 31), and, generally, parties may orally modify a written contract (*Estate of Kern v. Handelsman*, 115 Ill. App. 3d 789, 794 (1983)). However, parties may not modify such an agreement if it affects their children's interests. *Blisset v. Blisset*, 123 Ill. 2d 161, 167 (1988). In *Blisset*, the parties allegedly entered an agreement that wife would waive child support in exchange for husband waiving his visitation rights. *Id.* Our supreme court held that such an agreement was not enforceable, stating:

> "The modification of a child support obligation is a judicial function, administered exclusively by the court as a matter of discretion. [Citation.] The court is obligated in marital dissolution proceedings to protect the best interests of the children involved. [Citations.] Moreover, although property disposition agreements between spouses are binding upon the court, unless unconscionable, in marital dissolution proceedings, the court is not bound by agreements providing for the support, custody, and visitation of the children. [Citation.] Allowing former spouses to modify a court-ordered child support obligation by creating a new agreement between themselves without judicial approval would circumvent judicial protection of the children's interests. Former spouses might

agree to modify child support obligations, benefiting themselves while adversely affecting their children's best interests. Parents may not bargain away their children's interests. [Citations.] It is for this reason, then, that parents may create an enforceable agreement for modification of child support only by petitioning the court for support modification and then establishing, to the satisfaction of the court, that an agreement reached between the parents is in accord with the best interests of the children." *Id.* at 167-68.

¶ 23    Here, Nathan and Britt never sought court approval of their 2015 agreement. As such, even if we were to determine that the parties had modified the JPA, we would find that alleged modification to be unenforceable. See *id.* at 168.

¶ 24    We next consider Nathan's argument that, despite the lack of an enforceable modification of the JPA, Britt should be equitably estopped from collecting child support arrearages. Equitable estoppel exists where a party, by his or her own statements or conduct, induces a second party to rely, to his or her detriment, on the statements or conduct of the first party. *In re Marriage of Smith*, 347 Ill. App. 3d 395, 399 (2004). The party who asserts estoppel must have relied upon the other party's acts or representations and not have any knowledge or convenient means of knowing the facts, and such reliance must have been reasonable. *In re Marriage of Hodges*, 2018 IL App (5th) 170164, ¶ 18. Equitable estoppel may apply to a claim for child support arrearage. See *In re Marriage of Jungkans*, 364 Ill. App. 3d 582, 584-85 (2006). A finding that the doctrine of equitable estoppel applies must be based on clear and convincing evidence and will not be reversed unless the trial court abused its discretion (*Babcock v. Martinez*, 368 Ill. App. 3d 130, 142 (2006)) or the finding is against the manifest weight of the evidence (*Smith*, 347 Ill. App. 3d at 401).

¶ 25    Nathan's argument that equitable estoppel applies to this case is unpersuasive. The facts in this case are that the parties executed a JPA that required Nathan to annually disclose his income

to Britt. His failure to do that led Britt to accept a lesser amount of child support than she was entitled to receive under the JPA. Because Nathan's actions prevented Britt from knowing how much child support he owed her, he cannot now claim that he reasonably relied to his detriment that her acceptance of that lesser amount meant that he no longer had to comply with the JPA. See *In re Marriage of Bjorklund*, 88 Ill. App. 3d 576, 580 (1980) (holding that respondent could not "justifiably rely on petitioner's relative silence on this matter in light of the existence of the divorce decree which provided for the payment of support to petitioner"); *Hoos v. Hoos*, 86 Ill. App. 3d 817, 823 (1980) ("[a]cquiescence or even silence is not a *de facto* approval" and "respondent's reliance on such acquiescence would not constitute a detrimental change of position").

¶ 26     We next turn to Nathan's argument that the trial court erred in finding him in civil contempt for not timely paying child support. "Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107 (2006). "The failure to pay child support under a court order or judgment is *prima facie* evidence of indirect, civil contempt." (Internal quotation marks omitted.) *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 62 (2008). "Proof of willful disobedience of a court order is essential to any finding of indirect civil contempt." *In re Marriage of McCormick*, 2013 IL App (2d) 120100, ¶ 17. The burden initially falls on the petitioner to establish, by a preponderance of the evidence, that the alleged contemnor has violated a court order. *Id.* Once that burden is satisfied, the burden shifts to the contemnor, who has the burden of showing that the violation was not willful and contumacious and that he or she had a valid excuse for failing to follow the order. *In re Marriage of Knoll & Coyne*, 2016 IL App (1st) 152494, ¶ 50. "Contumacious conduct consists of 'conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of

the court.' " *Charous*, 368 Ill. App. 3d at 108 (quoting *In re Marriage of Fuesting*, 228 Ill. App. 3d 339, 349 (1992)). "Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court should not disturb the trial court's determination unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *McCormick*, 2013 IL App (2d) 120100, ¶ 17.

¶ 27    Here, Britt established that Nathan had not complied with the parties' JPA by his failure to provide annual income information; as a result, he paid less child support than she was entitled to receive. This constituted *prima facia* evidence of Nathan's indirect civil contempt (*Baumgartner*, 384 Ill. App. 3d at 62), and the burden therefore shifted to him to prove that the violation was not willful and contumacious and that he had a valid excuse for failing to follow the order (*Knoll*, 2016 IL App (1st) 152494, ¶ 50). At the hearing, Nathan argued that he did not provide Britt with his financial information because she did not give him hers. That is not a valid excuse, however, because the JPA did not require Britt to give Nathan any financial information; it only obligated Nathan to provide his information to Britt. On appeal, Nathan falls back on his argument that he did not provide the requisite financial information because, under his interpretation of the JPA, he did not believe he had to. Again, we reject Nathan's argument that the JPA was ambiguous, as it plainly stated that he was to provide his financial information to Britt on an annual basis. As such, the trial court did not err in finding Nathan in contempt. See *McCormick*, 2013 IL App (2d) 120100, ¶ 17.

¶ 28    Nathan next argues that the trial court erred in finding him in civil contempt while imposing a criminal penalty. Because he was subject to a criminal penalty, Nathan insists that he was entitled to certain procedural safeguards, such as notice and the opportunity to answer. See *People v.*

*Hixson*, 2012 IL App (4th) 100777, ¶ 14. Because he was not afforded these safeguards, he contends that the trial court's contempt finding must be reversed.

¶ 29    In *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 278-80 (2006), this court explained the difference between criminal and civil contempt. We stated:

"The test for classifying contempt is the totality of the circumstances, as these influence the court's purpose to either punish the contemnor or coerce compliance with a court order. *People v. Penson*, 197 Ill. App. 3d 941, 945 (1990). Contempt orders may best be described as *sui generis*, and may partake of the features of either criminal or civil contempt. *People v. Warren*, 173 Ill. 2d 348, 368 (1996). 'Although there has been continuing debate over the difficulty in distinguishing between criminal and civil contempt [citations], there are particular features [that] determine the nature of each.' *Warren*, 173 Ill. 2d at 368.

The primary determinant of whether contempt proceedings are civil or criminal is the purpose for which the contempt sanctions are imposed. [*In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990)]. Generally, civil contempt is recognized as a sanction or penalty designed to compel future compliance with a court order. *Warren*, 173 Ill. 2d at 368. As such, civil sanctions are considered to be coercive and avoidable through obedience. *Warren*, 173 Ill. 2d at 368. Criminal contempt, on the other hand, is punitive and is instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct. *Warren*, 173 Ill. 2d at 368-69.

Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. *Betts*, 200 Ill. App. 3d at 44. The conduct sought to be coerced by civil contempt

proceedings often confers benefits on opposing parties in civil litigation. *Betts*, 200 Ill. App. 3d at 44.

In distinguishing the purposes of criminal and civil contempt sanctions, it may be helpful to view the sanctions as either retrospective or prospective. See *Betts*, 200 Ill. App. 3d at 46. Criminal sanctions are retrospective in that they seek to punish a contemnor for past acts that he cannot now undo. *Betts*, 200 Ill. App. 3d at 46. Civil sanctions are prospective in that they seek to coerce compliance at some point in the future. *Betts*, 200 Ill. App. 3d at 46. That point in the future might occur upon immediate compliance in open court or upon compliance whenever the contemnor chooses to use his 'key'—namely, compliance—to open the jailhouse door. *Betts*, 200 Ill. App. 3d at 46." *Id.* at 278-79.

¶ 30 Here, the trial court entered an order setting a "purge amount" of $7,500 that Nathan was required to pay within 30 days. The trial court indicated that if Nathan failed to pay that amount, it "could" order him to be held in the De Kalb County jail for a period not exceeding six months. Thus, Nathan held the "key" to his cell, and he could have purged the contempt at any time (including before or after the stay of enforcement expired). The trial court's order called for no further action to be taken against Nathan once he achieved compliance by paying the purge amount; hence, its purpose was not to punish him retrospectively but rather to coerce his compliance. See *id.* at 279. We therefore determine that the trial court properly classified its contempt order as civil and did not err in failing to provide to Nathan additional procedural safeguards commensurate with a criminal contempt proceeding.

¶ 31 Nathan's final contention on appeal is that the trial court erred in ordering that he pay Britt's attorney fees and costs. Nathan insists that Britt failed to provide sufficient evidence as to

the reasonableness of her fees. He therefore contends that the trial court should not have awarded her the requested amount of attorney fees and costs.

¶ 32 On June 26, 2024, the trial court conducted a hearing on Britt's petition for fees and costs pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2022)). Britt's attorney submitted over 40 pages of documents in support of the claim for attorney fees. These documents specified the services that Britt's attorney performed, the amount of time that was spent on those services, and the hourly rate of either $300 or $325 that was charged. The fee petition requested $33,946.32.

¶ 33 On July 31, 2024, the trial court granted the fee petition in the amount requested. The trial court found that the hourly fee of $300-$325 was reasonable in the De Kalb County area. The trial court further found that the fee invoices for matters pending from January 28, 2022, to April 5, 2024, were fair and reasonable based on the arguments and evidence presented.

¶ 34 Where attorney fees sought relate to successful enforcement of a child support award, and the failure to pay was " 'without cause or justification,' " an award of fees against the person who owed the past-due support is considered mandatory. *In re Marriage of Betts*, 155 Ill. App. 3d 85, 105 (1987) (quoting *In re Marriage of Stanley*, 133 Ill. App. 3d 963, 974 (1985)). Because the primary prerequisite to any contempt finding is willful, contumacious conduct, it therefore follows that a contempt order carries with it an implicit finding that a failure to make child support payments is without cause or justification. *Id.*

¶ 35 A party seeking an award of attorney fees bears the burden of presenting sufficient evidence from which a trial court can determine their reasonableness. *Kroot v. Chan*, 2017 IL App (1st) 162315, ¶ 37. To justify an award of fees, "more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client." *Kaiser v. MEPC American*

*Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). Rather, the petition for fees must specify the services performed, the attorney who performed the services, the time expended, and the hourly rate charged. *Huss v. Sessler Ford, Inc.*, 343 Ill. App. 3d 835, 843 (2003). Once presented with this information, the court should also consider the skill of the attorney performing the service, the novelty or difficulty of the issues and work involved, the usual and customary charges for comparable services, and the benefit to the client. *Kaiser*, 164 Ill. App. 3d at 984. An evidentiary hearing is not always necessary in order to determine reasonable attorney fees. *Kroot*, 2017 IL App (1st) 162315, ¶ 37. A nonevidentiary proceeding is proper so long as the trier of fact can determine from the evidence presented (including a detailed breakdown of fees and expenses) what amount would be reasonable, and the opponent is not deprived of the opportunity to present evidence. See *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 495-96 (1996). We review the decision to award attorney fees for an abuse of discretion. *Jones v. Lockard*, 2011 IL App (3d) 100535, ¶ 45.

¶ 36     Here, in support of her fee petition, Britt's attorney submitted documents that specified the services she performed, the amount of time that she spent on those services, and the hourly rate she charged. This was sufficient information for Britt to recover her attorney fees and costs. See *Huss*, 343 Ill. App. 3d at 843. We further note that Nathan was given the opportunity to challenge the amount of fees that Britt allegedly incurred. See *Raintree Health Care Center*, 173 Ill. 2d at 495-96. As the trial court specifically found that both the invoices Britt's attorney submitted and the rate she charged were reasonable, we cannot say that the trial court abused its discretion in granting Britt's fee petition.

¶ 37                                III. CONCLUSION

¶ 38    For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

¶ 39    Affirmed.

*In re Marriage of Spangler*, **2025 IL App (2d) 240303**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 09-D-320; the Hon. Sarah Gallagher Chami, Judge, presiding. |
| **Attorneys for Appellant:** | Andrea Hoeflich, of Woodridge, for appellant. |
| **Attorneys for Appellee:** | Nina H. Cosentino, of Cosentino Law Firm, LLC, of DeKalb, for appellee. |